UNITED STATES of America

v.

Charles R. HOWARD, Appellant.

No. 23553.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 12, 1970.

Decided July 31, 1970.

**506**

Mr. Cecil A. Beasley, Jr., Washington, D.C., with whom Mr. John C. Smuck, Washington, D.C. (both appointed by this Court) was on the brief, for appellant.

Mr. Herbert B. Hoffman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, ROBINSON, Circuit Judge, and NICHOLS,* Judge, United States Court of Claims.

NICHOLS, Judge:

Appellant Charles R. Howard was charged in separate counts, with petit larceny (22 D.C.Code § 2202), unauthorized use of a motor vehicle (22 D.C.Code § 2204) (hereinafter unauthorized use), and interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312) (hereinafter interstate transportation). The jury found him guilty on each count. So far as it requires extended consideration, this appeal challenges the sufficiency of the trial judge's instructions to the jury on the last two counts. Although we perceive imperfections in these instructions, when reading them in the context of the complete record as we must, we do not find them so prejudicial as to constitute reversible error. Appellant also asserts that one of the essential elements for conviction under the District of Columbia's petit larceny statute *supra* was lacking in the Government's case, and that therefore the guilty verdict on this count must be reversed. We agree and accordingly reverse on this count.

Taking the witness stand in his own behalf, appellant Howard testified that he innocently borrowed the stolen automobile from a Mr. Walter Jackson who he sincerely believed was the true owner. He described in detail how this came about, and his use of the car in a nocturnal exploration of the streets of Baltimore, that preceded his arrest. Mr. Jackson, however, could not be or was not located by either side to corroborate or refute this testimony. Appellant's only support was offered by Mr. Alphonso Philpot, a passenger in the stolen automobile at the time of appellant's arrest. On direct examination by defense counsel, Mr. Philpot said that when he asked appellant where he obtained the automobile, Mr. Howard replied that "he had borrowed the car from a boy named Walter *Johnson*". (Emphasis supplied). Four other persons accompanied appellant and Mr. Philpot in the stolen car at the time of arrest, but for unknown rea-

* Sitting by designation pursuant to Title 28, U.S.Code, Section 293(a).

sons they were not produced, despite appellant's alleged efforts to produce them.

The Government offered the following evidence: On July 17, 1968, Mr. Dubois McCoy, upon returning from work, parked his 1965 Chevrolet on the 1700 block of S Street in the Northwest section of the District of Columbia. At about 6:15 the following morning, he reported to the D. C. Metropolitan Police that the car was missing. Mr. McCoy gave further testimony which for chronological purposes will be presented *infra.*

Following Mr. McCoy on the witness stand came Maryland State Trooper John Glorioso who testified without contradiction as follows: During the early morning hours of July 21, 1968, while cruising south on the Baltimore/Washington Parkway, Trooper Glorioso saw a 1965 Chevrolet parked on the roadside shoulder. Several persons were observed standing around the parked car. He stopped briefly to inquire whether his assistance was needed, and when told that it was not, he proceeded to resume his regular patrol duty, but radioed the Chevrolet's District of Columbia's license tags numbers to his barracks to find out whether they were stolen. He was informed that these tags had been reported stolen from a 1961 Ford. Trooper Glorioso, remembering the parked car to have been a 1965 Chevrolet, asked his barracks informant to double-check his finding. The answer was unchanged: the tags were stolen. This information then prompted the trooper to pull his cruiser off the Parkway, wait for the Chevrolet to pass his station, and pursue it to a halt. Trooper Glorioso identified appellant Charles Howard as the driver of the Chevrolet with the stolen tags. The trooper next located the Chevrolet's serial number and 'phoned it in to his barracks. In his own words "The serial number came back a stolen vehicle, '65 Chevrolet listed to a gentleman who lived in the District of Columbia." Mr. Howard was then taken into custody along with Mr. Philpot and the four oth-

er passengers; all of whom with the exception of appellant were later released without charges.

Shortly after Mr. Howard's arrest, Mr. Dubois McCoy was asked by the Maryland State Police to identify the 1965 Chevrolet found in appellant's possession. Mr. McCoy got to the designated police barracks and there recognized the car which he had parked and reported missing four days earlier. Mr. McCoy produced a registration card bearing the same serial number as the one found on the stolen Chevrolet. The Maryland State Police surrendered to him the custody of the car. Mr. McCoy declared that he never saw appellant prior to his visit to the Maryland State Police Barracks, and that he never gave him permission to use his automobile.

Evidence regarding the stolen D. C. license tags was introduced through the affidavit of Brenda T. Moorman, whose statements were stipulated to by both sides. Miss Moorman swore that she was the owner of a 1961 Ford, that on July 12, 1968, her D. C. license tags were stolen, and that she did not know defendant Charles Howard, nor did she ever give him or anyone else authorization to remove her tags.

With the introduction of this affidavit, the Government rested its case. Defense counsel then called as witnesses the defendant and Mr. Philpot whose testimonies were summarized above. No other defense witnesses were called.

At the close of defendant's case, both counsel and the trial judge, without the jury present, conferred on jury instructions. Defense counsel is recorded to have had "specific objection" to the way the Government's proposed instruction on the permissible inference flowing from exclusive possession of recently stolen goods was "drawn". He complained that "the jury should [not] be told: unless satisfactorily explained." This was the whole of his protest. Without ruling on the objection, the

trial judge read his own version of the permissible inference instruction:

> If you [the jury] find that the government has proved beyond a reasonable doubt that the defendant was in exclusive possession of a motor vehicle in Maryland and that the vehicle had recently been stolen in the District of Columbia, and the defendant's possession of the vehicle on the date in question has not been satisfactorily explained, then if you see fit to do so you may infer therefrom that the defendant is guilty of the offense of interstate transportation of a stolen motor vehicle. You are not required to so infer but you may do so if you deem it appropriate. The term recently stolen does not refer to any specific period of time. It is for you to determine on the basis of all the facts and circumstances whether the motor vehicle was recently stolen and was in exclusive possession of the defendant shortly after stolen.

Asked for comment by the trial judge, defense counsel, without explaining the meaning or basis of his previous objection, generally challenged the court's proposed instruction by objecting "to the use of it." The trial judge overruled this objection, and after considering some other matters irrelevant to this appeal, he proceeded to instruct the jury on points of law. Certain of these instructions, especially the one quoted above, are the focal points of this appeal.

### I.

Appellant's primary argument is that the permissible inference instruction— used by the trial judge in connection with both the unauthorized use and the interstate transportation charges—was worded in such a way and placed in such a context as to lead the jury to believe that the judge had ruled the appellant's explanation for possessing the stolen automobile to be unsatisfactory. The effect of the jury charge as a whole, he continues, was "a directed verdict against [him] on the only real issue in the case * * *."

Specifically appellant asserts that this misimpression was triggered by the trial judge's doubtlessly inadvertent omission of the word "that" before the clause "the defendant's possession of the vehicle * * * has not been satisfactorily explained." In his brief, appellant sets off this clause with dashes, instead of the court reporter's commas, "for the purpose of illustrating how the jury must have heard it." With appellant's revised punctuation the permissible inference instruction reads as follows:

> Now if you find that the government has proved beyond a reasonable doubt that the defendant was in exclusive possession of the motor vehicle in Maryland and that the vehicle had recently been stolen in the District of Columbia—and the defendant's possession of the vehicle on the date in question has not been satisfactorily explained—then if you see fit to do so, you may infer therefrom that the defendant is guilty of the offense of interstate transportation of a stolen motor vehicle.

In explaining the legal prerequisites for the crime of "unauthorized use", the trial judge again delivered this instruction, and again omitted the word "that" before the "satisfactorily explained" clause. Thus appellant urges that when this repeated omission is contrasted with the court's "meticulous inclusion of the word 'that' in conjunction with the uncontested requirements of exclusive possession and recent theft," the potential for prejudicial misunderstanding by the jury becomes obvious.

■ We find initially that despite appellant's arguments to the contrary, his defense counsel at trial did not "object" to the permissible inference instruction as required by the Federal Rules of Criminal Procedure, Rule 30 of which provides in pertinent part:

### INSTRUCTIONS

* * *. No party may assign as error *any* portion of the charge or

*omission* therefrom unless he objects thereto before the jury retires to consider its verdict, stating *distinctly* the matter to which he objects *and* the grounds of his objection. (Emphasis supplied.)

Appointed appellate counsel, like the attorney before us for Mr. Howard, may often find it difficult to explain or justify the apparent failings of the likewise appointed and different trial counsel. Appointed counsel must make decisions and at times take risks as retained counsel do, with like consequences. *Cf.* Gallagher v. United States, 423 F.2d 1371, 191 Ct.Cl. 546 (1970). Counsel below, as recorded in the transcript and as noted above, did specifically object to the "unless satisfactorily explained" language in the proposed *Government* instruction, but after listening to the *court's* version (ultimately used in the charge), he merely raised objection "to the *use* of it." (Emphasis supplied). Conspicuously absent from this protest was a distinct reference, with supporting grounds, to any language deemed objectionable. We must suppose trial defense counsel had reasons for this. Present counsel's excuse is that "the Trial Court * * * [so] tersely cut off discussion with his (sic) 'Objection overruled'", thus making further challenge appear futile. He also warns anticipatorily that "for this Court to rule that defense counsel must continue to argue with a trial court after its unmistakable ruling on specific objections * * * in order to preserve the issue for review, would raise serious questions in the area of contempt and the degree of zeal a lawyer should and may lawfully exhibit in representation of his client."

Although we can not quarrel with the general soundness of this admonition, we are nevertheless unable, after carefully reading the trial transcript, to impute to the trial judge such authoritarian behavior as would have excused an intimidated defense counsel from making a competent Rule 30 objection. On the contrary, we find him to have been particularly amenable to receiving objections to his instructions. This colloquy between the trial judge and defense counsel took place *after* the jury had been charged:

> THE COURT: * * * do you have any objections to any part of the Court's instructions?
>
> [DEFENSE COUNSEL]: Just as previously stated, Your Honor.
>
> THE COURT: Whatever you stated is on the record. [Is there anything] [o]ther than what you have previously stated?
>
> [DEFENSE COUNSEL]: No.

Clearly the court asked for specific objection, but counsel chose to let his general and non-complying protest stand. We hold therefore that appellant may not now assign as error the allegedly prejudicial effect of the poorly worded permissible inference instructions. Under Federal Rule of Criminal Procedure 52(b), the only way an instruction not objected to may be viewed as prejudicial by this court is if it constitutes plain error "affecting substantial rights." Lopez v. United States, 373 U. S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); United States v. Washington, 134 U.S.App.D.C. 135, 136, 413 F. 2d 409, 410 (1969); Howard v. United States, 128 U.S.App.D.C. 336, 339, 389 F.2d 287, 290 (1967) (unrelated defendant). We now consider whether plain error appears.

To aid our appreciation of the prejudicial impact of these instructions, appellant urges that we read them in the light of other alleged flaws found in the record. When so read, these instructions, according to appellant, "could fairly [have been] understood by the jury as a directed verdict for the government on * * * [the satisfactory explanation] issue." The following alleged errors, none of which were objected to at trial, specifically or otherwise, are said to aggregate "to strengthen and confirm a jury understanding of this [permissible inference] instruction as a legal con-

demnation of appellant's explanation of borrowing the car":

First, appellant argues that although the trial court defined recent theft and exclusive possession—"the other two prerequisites for the prosecution"—it nevertheless remained "significantly silent" as to the meaning of "satisfactorily explained." He therefore concludes that "This silence necessarily would tend to confirm a jury understanding that * * * [his] explanation was 'out of the case' ".

Second, in connection with the above, appellant further advances that not only did the trial judge fail to define "satisfactorily explained", but he also neglected to apprise the jurors that the defense of innocent borrowing if believed by them *was* indeed a satisfactory explanation. Analyzing from Freije v. United States, 386 F.2d 408 (1st Cir. 1967), appellant contends that the failure to *separately acknowledge* this as a valid defense to the charges of unauthorized use and interstate transportation was reversible error.

Third, since the jury instructions as a whole contained several examples of midsentence parenthetical statements, appellant argues that the frequent recurrence of these verbal asides reaffirmed to the jury that the "satisfactorily explained" clause in the permissible inference instructions was such a statement. The most flagrant of these midsentence parentheticals is said to appear in the so-called *falsus in unus, falsus in omnibus* instruction:

> If you should find any witness, *and I make no exceptions, any witness, including the defendant, of course*, who under oath has testified or knowingly testified falsely regarding any material matter in the case the truth of which he could not have been in your judgment or opinion reasonably mistaken, then the jury is at liberty if it sees fit to do so, disregard any part of the testimony of a witness or you may elect to disregard all the testimony of that witness. (Italics indicate what

appellant perceives as midsentence parenthetical.)

Appellant marks this instruction as important for two reasons. The reporter failed to set off the "parenthetical" with dashes, as had been his demonstrated practice; instead he used commas. To appellant this means that in the permissible inference instructions, the use of commas to enclose the "satisfactorily explained" clauses, does not *per se* denote that they were not spoken nor heard as asides. Also, the special singling out of the defendant and the improper grammatical sentence construction linking defendant to the clause "who under oath testified * * * falsely," combined, according to appellant's counsel to convey to the jury that the judge thought defendant was lying.

■■ Although some of appellant's arguments are meritorious, they nevertheless *do not muster the force to raise the permissible inference instructions to the level of plain error, nor do any of them represent plain error individually.* Regarding the trial judge's failure to preface the "satisfactorily explained" clauses with the word "that" we are not persuaded that this was a fatal omission. As to correcting the reporter's punctuation, we must assume, without more, that the jury received instructions with the same understanding as the reporter. Moreover, from their cold wording, we can not conjecture favorably to appellant as to any possible subtle or distinctive inflection in the judge's voice which would have given the jury a prejudicial misimpression. Every "midsentence parenthetical" cited by appellant whether preceded by dashes or commas is so constructed, we think, as to make the jury aware that a break had occurred in the continuity of the instruction. The permissible inferences' *satisfactory explanation clauses*, however, are not so constructed. In short, this omission is just too minor a flaw to constitute plain error.

We now consider whether this minor flaw was expanded to plain error pro-

portions by the other infirmities urged by appellant:

■ First, it is impossible to read the instructions as telling the jury that the issue whether the explanation was satisfactory was out of the case, merely by their stress on other issues. There is no such contrast as to give rise to a negative inference. Therefore, lack of greater explicitness was not plain error in the light of the complete record. *Cf.* Pendergrast v. United States, 135 U.S. App.D.C. 20, 34–35, 416 F.2d 776, 790–791, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). The record affords several instances of the trial judge reminding the jury of their plenary fact finding power. For example, with regard to the charges generally: "The jury must decide what the facts are, whether or not the government proved the case beyond a reasonable doubt as to each of the counts." With regard to the first permissible inference instruction given in the context of the unauthorized use count: " * * * and the defendant's possession of the automobile on the date in question and under the circumstances in question has not been satisfactorily explained *to you* * * *." (Emphasis supplied). Clarifying this instruction the court said further: "I think the instruction is self explanatory and you will decide what the facts are in the case * * *." Regarding credibility of witnesses: "You are the sole judges of the credibility of the witnesses, that means you must decide which witnesses to believe and to what extent you believe them." Regarding the jury's mandate: "You are the sole and exclusive judges of the facts in the case * * *." If the admittedly imperfect permissible inference instructions generated the slightest confusion in the minds of the jurors as to who was to decide the satisfactory explanation issue, it should have been dispelled by the following direction: "Now in considering the instructions which I have given you you should consider them in their entirety, that is, as a whole and you should not select or pick out some instruction or phrase or word or sentence and accentuate those and overlook the others, but you should, as I said, consider them in their entirety." The court also recognized that the jury might want "a certain instruction reread or clarified" to assist their deliberations. In this event he urged them "to send a note" from the juryroom indicating their wishes. From the foregoing excerpts as well as others found in the trial record, we conclude that the jurors were made adequately aware of their exclusive fact finding prerogatives. The worst that can be said of the instruction on the permissible inference from exclusive possession is that *it is* ambiguous, but its ambiguity is cured by its context. In *Pendergrast, supra,* 135 U.S.App.D.C. at 33, 416 F.2d at 789, we referred to similar clauses as curing possible ambiguity within a single challenged instruction.

■ Second, that the trial judge erred in not elaborating on appellant's defense theory is not well taken. Although we reaffirm our thesis that "where there is evidentiary support for special facts sustaining a rational defensive theory, *to which the court's attention is specifically directed,* the defendant is entitled to have the jury charged on that theory", (Brooke v. United States, 128 U.S.App.D.C. 19, 24, 385 F. 2d 279, 284 (1967)), (emphasis supplied), we are not persuaded that this thesis is applicable here. In *Brooke,* defense counsel explicitly asked the judge for a jury instruction containing his theory of the case. Although the desired instruction was labelled inaccurately, the language of the request coupled with the trial testimony made clear the kind of instruction sought. In our case, however, counsel did not specifically request an instruction of his defense theory. The logical explanation is that he simply believed, as we do now, that the detailed testimony of Mr. Howard ade-

quately set forth the legally uncomplicated defense of innocent borrowing. If the jury believed his testimony, we think it is impossible to suppose that even without a "separate acknowledgment" they would have failed to deem it a satisfactory explanation "sufficient * * * to negate any artificial inference * * * arising from the mere fact of possession." Freije v. United States, *supra,* 386 F.2d at 410–411. We hold therefore that the trial judge's failure to deliver *sua sponte* instructions on the defense's theory, beyond the "satisfactorily explained" caveats of the permissible inference instructions, was not plain error.

▮▮▮▮ Regarding appellant's objections to the *falsus in unus* instruction, only one has substance meriting discussion. As noted above the trial judge included in his instruction this *direct* reference to the testimony of the defendant: "If you should find any witness, and I make no exceptions, any witness, including the defendant, of course, who under oath has testified * * * falsely * * *." Such a singling out of an accused in this context was not only gratuitous, but also potentially misleading to the jury. We say "potentially" because we believe that the instructions delivered in the charge as a whole were adequate to impress reasonable jurors with a clear understanding of their exclusive authority to judge witness credibility. We believe, however, that when the accused testifies in his own behalf, any gratuitous suggestion or implication in instructions, that he is more likely to lie than other witnesses, is to be avoided. *Cf.* Pendergrast v. United States, *supra,* 135 U.S. App.D.C. at 30, 416 F.2d at 786; Armstead v. United States, 121 U.S.App.D.C. 22, 347 F.2d 806 (1965).

In summary, we hold that considered either in their aggregate effect on the "satisfactorily explained" clauses of the permissible inference instructions or individually, these secondary deficiencies urged upon us by appellant did not in-fect the trial below with plain error affecting substantial rights. Therefore, as to the unauthorized use and interstate transportation counts, we affirm.

Before moving to a discussion of appellant's petit larceny objection, however, we remind trial judges that in *Pendergrast,* 135 U.S.App.D.C. at 34–35, 416 F.2d at 790–791, we appended a model instruction on the permissible inference of guilt of robbery which could be drawn from a defendant's unexplained possession of recently stolen goods. Prefacing this appendix was the following language worth repeating here:

> We have a rather clear idea of the frequency with which the judges of the District Court are called upon to charge juries on this aspect of the law, and an acute awareness of the pitfalls encounterable in that undertaking. To the end that the judges and the practicing bar may be assisted in this regard, and incidental controversies may be held to a minimum, we set forth * * * [this instruction] which may serve as a model, *not only in robbery cases, but by adaptation in the prosecution of any larceny-type offense.* And we commend to the serious consideration of all who may be interested the principles we have endeavored to articulate therein. (Emphasis supplied.)

In reviewing the instant appeal we notice that the trial below *post-dated Pendergrast.* Had the trial judge employed our model, with proper modifications to accommodate the unauthorized use and interstate transportation charges and deletions to exclude the issue, not here relevant, as to whether appellant himself committed the theft, the basis for this appeal would not have been substantial. We are not concerned with robbery and the judge may have thought that the elements of the offenses charged here, or some of them, did not constitute them as "larceny-type" offenses. Nevertheless

there is an obvious parallel between the permissible inference instruction needed in robbery and larceny cases and that used in the related crimes of unauthorized use and interstate transportation, and we linked them in *Pendergrast,* fn. 64. Under the interstate transportation count, the jury had to find appellant knew the car was stolen. We hope that in the future our model will be followed with adaptations in these related areas. In saying this, we do not wish to convey that our *Pendergrast* formula is the *only* legally acceptable method for charging juries on these matters. Neither do we wish to suggest that deviating methods will, on appeal, be required to meet a more severe test. Our only purpose in drafting this model was to equip District judges with a text that could be used with confidence in all but exceptional cases. Underlying this purpose was the practical desire to avoid the open appellate questions which arise when varying instructions are used.

## II.

Appellant argues persuasively that to find him guilty of petit larceny under the District of Columbia statute *supra,* the jury must have been presented with evidence from which it could infer beyond a reasonable doubt that the license tags were stolen *within* the District. The affidavit of Brenda T. Moorman contained the only evidence against appellant on this count: significantly it did not allege that the car was parked in the District when the theft occurred. Without any such allegation or comparable evidence to indicate venue, the jury could not be said to have arrived at its guilty verdict through a rational process. Accordingly, we reverse as to this count.

The judgment of conviction is affirmed as to counts 2 and 3, and reversed as to count 1. As to that count, the cause is remanded for further proceedings consistent with this opinion.

It is so ordered.