**Michael E. CONYERS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6973.**

District of Columbia Court of Appeals.

Submitted June 27, 1973.

Decided Sept. 11, 1973.

**310**

Sol Rosen, Washington, D.C., appointed by this court, for appellant.

Michael G. Scheininger, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and James F. Flanagan, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and YEAGLEY, Associate Judges.

KELLY, Associate Judge:

The claims in this appeal from a conviction of first-degree burglary [1] are that the trial court erred (1) in admitting the eyewitness testimony of the complainant and (2) in allowing the prosecutor to comment on the absence from trial of certain defense alibi witnesses. We affirm.

Trial testimony is that on the night of June 30, 1972, twelve-year-old Carrine Fisher, who was babysitting for the two small children of Mrs. Antoinelle Louise Motley in the latter's first floor apartment, put the children to bed and later went to sleep herself in the same bedroom. Although the lights were out, the room was illuminated by a bright orange streetlamp outside the window which shone through misshapen venetian blinds covering the drapeless windows. Carrine awoke about 3:00 a.m. to find a man standing over her. The man began choking her, telling her to lie still or he would kill her, but when he released his grip on her neck in an attempt to lift her nightgown, she struggled free and escaped from the apartment. Carrine returned with a neighbor to find the apartment empty, with the front door ajar and the screen off one of the bedroom windows. Her mother, who arrived shortly thereafter, found a note inside the front door reading "Mike was here" and instructing Mrs. Motley to call a specified telephone number.

When the police arrived, Carrine briefly described to them the size, apparel and hairstyle of her assailant. Two days later, at her home, the police showed her an array of nine photographs from which she identified appellant's photograph when she was about halfway through the array. Nine days later she attended a police line-up where she again identified appellant. When he was arrested on July 5th appellant had cuts on his right hand which he explained resulted from his job as a household furnishings mover.

1. D.C.Code 1972 Supp., § 22–1801(a).

After a pretrial *Wade-Simmons*[2] hearing to ascertain whether Carrine should be allowed to testify about her identification of the appellant the trial court decided that it would permit testimony concerning her several identifications, finding neither the photographic nor the lineup identification so suggestive as to deny the defendant due process of law. Additionally, the court found that Carrine's opportunity to observe her assailant during the attack itself was adequate to provide an independent source for an in-court identification.

At trial appellant denied he had been at the Motley residence on the night in question. He did admit that he knew Mrs. Motley, had visited her before at her home, and had left the note Carrine's mother found, but claimed that he had left the note outside the front door the night before after knocking and finding no one at home. Mrs. Motley's testimony was that she had been home all evening the night before the burglary took place. Appellant testified that he had been at the home of friends, Mr. and Mrs. Daniel Ross, during most of the evening in question and that he had thereafter returned to the apartment he shared with his girl friend. He did not, however, call any of these persons to testify on his behalf and corroborate his alibi. The prosecutor, in his closing argument to the jury, commented on the absence of these possible witnesses.

■ In determining whether an out-of-court identification was *improper* one must look to "the totality of the circumstances surrounding it". Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Only if the procedure followed was so impermissibly suggestive as to give rise to a very substantial likelihood *of misidentification must it be held* inadmissible. Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401

(1972). Appellant's contention here is that both the photographic array and the lineup were unduly suggestive, and thus prejudicial, because he was the only person in either group who possessed all three characteristics he alleges the complainant was looking for; *i.e.*, a facial scar, chin hairs, and a short bush haircut.

■ With respect to the photographic identification the uncontroverted testimony was that the child was handed the nine photos and permitted to leaf through them without any prompting from anyone. She identified appellant the first time through. Although appellant argues that he was the only person pictured who had both a goatee and a facial scar which formed the basis for Carrine's selection of him, Carrine firmly resisted such contention in her testimony at the suppression hearing, responding that she chose appellant not just because of the scar and goatee but also because of his eyes. We have nevertheless carefully examined the photo array contained in this record and note that at least four of the men have chin hair, eight have hairstyles similar to that of appellant, which roughly might be characterized as a short bush, and cannot perceive a facial scar on any of them. It is our judgment, therefore, that the trial court correctly ruled that neither the array nor its presentation was impermissibly suggestive.

Appellant contends that in lineup identification Carrine chose appellant because he alone possessed the aforementioned combination of features, citing the following colloquy at the pretrial hearing:[3]

Q. So, he's the only one with that style hairdo, the only one with a goatee, and the only one with a scar; is that correct?

A. Yes.

2. Simmons v. United States 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United State v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

3. Tr. at 38-39.

Q. And isn't that why you picked him out?

A. Yes.

■■ The mere fact that appellant was capable of being selected on the basis of a combination of features does not itself render a lineup impermissibly suggestive. United States v. Lee, 148 U.S.App.D.C. 341, 342–343, 459 F.2d 1365, 1366–1367 (1972). To be objectionable, the makeup of or the manner in which the lineup is conducted must be such that the accused "stands out" so that identification of him as the perpetrator of the offense is unfairly suggested. Foster v. California, 394 U. S. 440, 442–443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). A careful examination of the photograph of this lineup convinces us that such is not the case here. It is impossible to say for certain from the photograph that appellant alone has chin hair. Moreover, it appears that several other men so resemble appellant that it cannot be seriously argued that he stood out from the others in such a manner as to render the array impermissibly suggestive. Foster v. California, *supra*. We therefore conclude that testimony concerning both of the out-of-court identifications was admissible at trial.[4]

Appellant's second contention is that the trial court erred in permitting the prosecutor to comment on the absence of certain defense alibi witnesses. The problem first surfaced during closing argument to the jury when the prosecutor stated:[5]

Now, ladies and gentlemen, what evidence is there to corroborate that particular testimony? He knows the witnesses; he's seen the witnesses, and those witnesses are not here today to corroborate his story. They're available witnesses, we submit to you ladies and gentlemen, and their absence speaks as loud as their testimony would be—

There was an immediate objection to these comments on the ground that no prior determination had been sought from the court on whether these persons were missing witnesses. In sustaining the objection, however, the court advised the prosecutor that he could argue that appellant had testified he had been with a Mr. Ross on the night in question, worked with Mr. Ross, and had not seen him that week, but that he could not "characterize what Mr. Ross's testimony may have been . . . ."[6] Following a curative instruction that the jury should "totally disregard that statement concerning what testimony Mr. Ross might have been able to give",[7] the prosecutor again reminded the jury that appellant knew Mr. Ross, knew where Mr. Ross lived, had testified that he was with him on the critical night, and continued by saying "you can ask yourself why Mr. Conyers does not have the witness—".[8] Upon a further interruption by objection which the court overruled, the prosecutor concluded, "You can ask why those people are not here."[9]

■■ The rule is well established that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). "Both comment by counsel and instruction by the judge as to absent

4. Since we have held that the out-of-court identifications were properly admitted we need not reach the question of whether an independent source existed for an in-court identification, although we agree that it did. It was, however, in the interest of efficient judicial administration for the trial court to rule on the adequacy of the in-court identification. *See* Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968), cert. denied

394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

5. Tr. at 144.

6. Tr. at 146.

7. Tr. at 148.

8. Tr. at 149.

9. *Id.*

witnesses is prohibited if either of the conditions is lacking, that the witness was peculiarly within the power of the party to produce, and that his testimony would elucidate the transaction." United States v. Young, 150 U.S.App.D.C. 98, 103–104, 463 F.2d 934, 939–940 (1972). Before either counsel may comment on the absence of a witness he must seek and obtain a ruling from the judge giving him permission to do so, "unless there is good reason to the contrary." United States v. Young, *supra* at 105, 463 F.2d at 941, reiterating the rule of practice set forth in Gass v. United States, 135 U.S.App.D.C. 11, 19–20, 416 F. 2d 767, 775–776 (1969).¹⁰ While it is obvious that the prosecutor here erroneously failed to follow the *Gass* procedure, we nevertheless are of the opinion that this error was rendered harmless by the corrective measure taken by the trial court in promptly instructing the jury to disregard the prosecutor's remarks, thus dispelling any prejudice which otherwise might have resulted. Pennewell v. United States, 122 U.S.App.D.C 332, 333, 353 F.2d 870, 871 (1965); Smith v. United States, 119 U.S. App.D.C. 22, 23, 336 F.2d 941, 942 (1964), cert. denied, 385 U.S. 1017, 87 S.Ct. 736, 17 L.Ed.2d 554 (1967).

█ The prosecutor's subsequent comments were preceded by an instruction from the court that the fact and extent of appellant's acquaintance with Mr. Ross could be argued with a caveat that no characterization of what Mr. Ross' testimony may have been should be given. This limited form of comment was sanctioned by Circuit Judge Fahy in Burgess v. United States, 142 U.S.App.D.C. 198, 440 F.2d 226 (1970), by drawing a distinction between comment on the absence of a potential witness and comment on what that witness' testimony might have been. Pointing out that the fact of the witness' absence was already known to the jury, he said that it was permissible for a party to comment on the failure of the opposing party to call that witness although he was "not entitled to urge upon the jury the right to draw an inference that the [witness'] testimony would have been unfavorable to the [opposing party]." Burgess v. United States, *supra* at 207, 440 F.2d at 235. Doubt concerning the validity of that distinction has been expressed in United States v. Young, *supra* note 16, 150 U.S. App.D.C. at 107, 463 F.2d note 16, at 943, where the court questioned whether, by emphasizing the fact of a witness' absence, counsel was not indeed suggesting that the jury draw an adverse inference although not expressly making such an argument to them. Such is the case here, for it is apparent that to the average juror the stricken statement, "their absence speaks as loud as their testimony would be", and the permitted one, "[y]ou can ask yourself why those people are not here", both suggest that the inference be drawn that the witnesses' testimony would have been unfavorable to the defendant. Thus the prosecutor should not have been allowed to continue his comments inviting the jury to speculate on the reason for the witnesses' absence.

█ We still must decide whether in this case the permitted comment amounted to prejudicial error. The test of prejudice was established by the Supreme Court in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946):

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if

10. Wynn v. United States, 130 U.S.App.D.C. 60, 64–65, 397 F.2d 621, 625–626 (1967), also recommends this procedure.

one is left in grave doubt, the conviction cannot stand.

Upon careful review of the record we can say "with fair assurance . . . that the judgment was not substantially swayed by the error". The victim identified the appellant as her assailant without hesitation both from photographs and at a lineup, and repeated her identification of him at trial. Appellant admitted he knew Mrs. Motley, had been to the apartment on prior occasions, and had in fact left the note found near the entrance. There was no missing witness instruction by the court to compound the effect of the prosecutor's comments, nor is it reasonable to assume that the remarks substantially influenced the jury in its deliberation. Accordingly, we conclude that the error does not require reversal and the judgment of the trial court is

Affirmed.