**Albert FLEMING, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6740.**

District of Columbia Court of Appeals.

Argued July 17, 1973.

Decided Oct. 2, 1973.

John A. Cardon, Washington, D.C., appointed by this court, for appellant.

David G. Larimer, Asst. U.S. Atty., with whom Harold H. Titus, Jr., U.S. Atty., and John A. Terry, Asst. U.S. Atty., were on the brief, for appellee.

Before KELLY, GALLAGHER and PAIR, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted of unauthorized use of a motor vehicle in violation of D.C. Code 1967, § 22–2204, and of receiving stolen property in violation of D.C.Code 1967, § 22–2205. On appeal he questions (1) whether there was sufficient evidence of receiving stolen property and unauthorized use of a motor vehicle to submit the case to the jury; (2) whether the trial court's instructions concerning his theory of defense, not objected to at trial, were proper; and (3) whether the court should have permitted the prosecutor to make reference to missing witnesses in his closing argument to the jury absent a prior request to the court for a missing witness instruction. We affirm.

On the morning of April 1, 1972, Mr. James G. Watt left his grey, wood paneled, 1969 Plymouth station wagon with a parking lot attendant at a garage near the Washington Hilton Hotel where he was attending a convention. Inside the car when Watt parked it were two coats, a blanket and his son's baseball glove. When he returned to the garage at about noon, he discovered that the car had been stolen and immediately notified the police. Watt testified that he gave no one permission to remove his car from the garage on April 1, that he had not entered into any negotia-

tions to sell the car, and that he did not know appellant.[1]

On May 17, 1972, at about 11:15 p.m., Officers Percell M. Gregory and Donald L. Wallace of the Metropolitan Police spotted Mr. Watt's automobile and noticed that the license tag number appeared on their list of stolen automobiles. The officers stopped the vehicle near 24th Street and Benning Road, N.E. Appellant Fleming was the driver of the car and in the car with him was a woman, later identified as appellant's common-law wife.

In response to the officers' request for his driver's license and car registration, appellant produced his own permit and a registration card in the name of James G. Watt. When asked what he was doing with the car appellant replied that he was in the process of buying the car from Mr. Watt. Officer Wallace testified that appellant gave an address "on Connecticut Avenue or somewhere upper Northwest", as the address of the person selling the car. Officer Wallace noticed, however, that Mr. Watt's address as listed on the registration card was not in the upper Northwest area of Washington but on Kember Road in Camp Springs, Maryland. Appellant was thereupon arrested.

That evening Officer Gregory telephoned Mr. Watt and asked him if he knew appellant. Mr. Watt said he did not. About thirty minutes later a woman identifying herself as appellant's wife (the same woman who was with appellant at the time of the arrest) also called Mr. Watt and asked him to verify the fact that Fleming was buying the car from him. Watt told her that he did not know Fleming and that he was not selling the car to anyone. Watt testified that she further told him that Fleming brought the car home with

him in the "first part of April" from which time it had been their family car.

Appellant claimed he was buying the car. He testified that one of his bowling companions, Peter Portertelli, introduced him to a "Mr. Watt" at the bowling alley at Capitol Plaza, Maryland, but this person was not the same Watt who testified to owning the car and reported it stolen. The parties discussed the sale of the car in question and agreed on a purchase price of $1,500 or $1,600. Appellant said that he made payments of $175 on April 17 and $200 on May 4,[2] and several more payments, totaling approximately $600. Transfer of title to the car was allegedly to be made when appellant paid $800. He testified he had given a copy of the original sales contract to his lawyer but no such document was produced at trial. Appellant claimed that he was unable to locate either Peter Portertelli or "Mr. Watt" before trial.

On cross-examination the government elicited from appellant the admission that he had been twice convicted of unauthorized use of a motor vehicle in 1971.

I

We first conclude that the jury was properly allowed to draw an inference of guilt from Fleming's possession of recently stolen property. In trials for offenses of which the taking of property is an essential element, this jurisdiction recognizes the rule that an inference of guilt may be drawn from the fact of exclusive possession of property recently stolen unless such possession is satisfactorily explained. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); Simon v. United States, D.C. App., 293 A.2d 859 (1972); Pendergrast v.

1. On May 5, 1972, the Reliance Insurance Company reimbursed Mr. Watt for the loss of his car and title to the car was transferred to the company at that time. A company representative testified that the insurance company had never given appellant permission to use the car.

2. Receipts for the April 17 and May 4 payments were introduced into evidence by appellant. He testified that they were retrieved from his desk drawer and that other receipts for later payments were placed in the glove compartment of the car. The car was searched by police and no receipts were found.

United States, 135 U.S.App.D.C. 20, 416 F.2d 776, cert. denied, 395 U.S. 926, 89 S. Ct. 1782, 23 L.Ed.2d 243 (1969). Jury instructions on the application of this inference are entirely correct, both in cases of unauthorized use of a motor vehicle[3] and in those concerning the receipt of stolen property.[4]

Appellant contends, however, that: (1) the inference does not arise because when he was arrested the property was not "recently" stolen; and (2) even if possession does raise an inference of guilt, the inference was overcome as a matter of law by his explanation for his possession.

A period of approximately six weeks elapsed between the date of the theft and the date appellant was found in possession of Watt's stolen automobile. In United States v. Johnson, 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970), the defendant was found in possession of an automobile which had been stolen almost nine months earlier and an automobile engine which was stolen about five and one-half weeks earlier. The court pointed out that:

> . . . the concept of recency is relative, and its elasticity depends heavily upon the nature of the property . . . and the surrounding circumstances. Generally speaking, the period which may be deemed recent lengthens inversely with the property's disposability . . . . All told, we cannot say that as a matter of law the jury could not consider the possession to be recent within the rule of inference. [Citations omitted.]

*Id.* at 60 n. 40, 433 F.2d at 1166 n. 40.

In Travers v. United States, 118 U.S. App.D.C. 276, 335 F.2d 698 (1964), the defendant was found driving a car which had been stolen two months earlier. He also offered the explanation that he had pur-

chased the auto from a third party. While the conviction was reversed on other grounds, the court had no quarrel with the trial court's jury instructions concerning the inference to be drawn from possession of recently stolen property:

> The judge left it to the jury to determine whether Travers's possession two months after the theft was "shortly after" the car was stolen; he correctly added that the longer the interval, the weaker the inference.

*Id.* at 280, 335 F.2d at 702.

■ The carefully worded instructions of the trial judge in the instant case concerning the permissible inferences to be drawn from the possession of recently stolen property were based closely on the model instruction formulated in Pendergrast v. United States, *supra*, 135 U.S. App.D.C. at 34–35, 416 F.2d at 790–791. The jury was instructed that:

> . . . the word "recently" as used in this instruction, is a relative term and it has no fixed meaning. Where the property is to be considered as recently stolen depends on all of the facts and circumstances in evidence. The longer the period of time since the theft of the property, the more doubtful becomes the inference which may reasonably be drawn from the unexplained or unsatisfactory [sic] explained possession of the property. [Tr. at 116–17.]

The court made it clear that (1) the jury was not *required* to draw any inferences; (2) possession of recently stolen property does not shift the burden of proof from the government which must prove beyond a reasonable doubt each of the essential elements of the offense; and (3) the inference is forbidden if the accused's possession of the property is satisfactorily ex-

---

3. United States v. Johnson, 140 U.S.App.D.C. 54, 57, 433 F.2d 1160, 1163 (1970) ; Scott v. United States, 125 U.S.App.D.C. 138, 369 F.2d 183 (1966).

4. Simon v. United States, *supra* ; Williams v. United States, D.C.App., 281 A.2d 293 (1971) ; Blue v. United States, D.C.App., 270 A.2d 508 (1970).

plained by independent evidence or by his own testimony.[5]

It was properly left for the jury to determine whether the automobile in appellant's possession six weeks after the theft was "recently stolen property". The jury was correctly instructed that the longer the time interval involved, the more doubtful the inference. Moreover, the jury was told that before drawing any inference of guilt it should consider appellant's own explanation for his possession of the automobile. "Obviously the jury did not find appellant's explanation satisfactory." [6]

Having concluded that the jury could draw an inference of guilt from appellant's possession of the property, we likewise conclude that the trial judge correctly denied appellant's motions for judgment of acquittal. In Greenwood v. United States, D.C.App., 225 A.2d 878, 880 (1967), we quoted with approval the following statement in Johnson v. United States, 121 U. S.App.D.C. 19, 20, 347 F.2d 803, 804 (1965):

> The case for the Government consisted of testimony of a police officer, who · * * * saw appellant driving the automobile * * * and the testimony of [the owner] * * * who affirmed his ownership of the automobile and stated that he had not given appellant or anyone else permission to use it. This evidence is sufficient to support the verdict * * *. Accord, Epps v. United States, 81 U.S.App.D.C. 244, 157 F.2d 11 (1946).

■■ Here, the evidence was in sharp conflict, but viewing it in the light most favorable to the government, as we must, we cannot say it fails to support the jury's

finding of guilt beyond a reasonable doubt. A trial judge must require acquittal only if the evidence is such that reasonable jury members *must necessarily* have reasonable doubt as to the guilt of the accused. The evidence herein presented was such that a reasonable mind might fairly have a reasonable doubt or might not have such doubt; hence, the issue was properly submitted to the jury. Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); Curley v. United States, 81 U.S.App.D.C. 389, 392, 397, 160 F.2d 229, 232, 237, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

## II

Appellant's next claim of error relates to the sufficiency of the instructions on his theory of defense. No objection was made to the charge at trial and there was no request for more detailed instructions.[7] Counsel on appeal, not trial counsel, now says that the failure to grant appellant's request for a specific instruction and the confusion created by reference to his defense constitute plain error.[8] We disagree.

There is in the record an oral request for an instruction on appellant's theory of defense. The United States Court of Appeals for the District of Columbia Circuit has stated that "[w]here there is evidentiary support for special facts sustaining a rational defensive theory, to which the court's attention is specifically directed, the defendant is entitled to have the jury charged on that theory. However weak the evidence, however implausible the theory may appear to be, the matter is for the jury's determination. . . ." [Footnotes omitted.] [9] We think that the oral

---

5. These instructions are in accord with the *Pendergrast* model. *See also* United States v. Johnson, *supra*, 140 U.S.App.D.C. at 61, 433 F.2d at 1167.

6. Blue v. United States, *supra* note 4, at 508 of 270 A.2d.

7. Super.Ct.Cr.R. 30: No party may assign as error any portion of the charge or omission

therefrom unless he objects thereto before the jury retires to consider its verdict . . .

8. Super.Ct.Cr.R. 52(b), which is identical to Fed.R.Crim.P. 52(b). *See* United States v. Howard, 139 U.S.App.D.C. 347, 351–352, 433 F.2d 505, 509–510 (1970).

9. Brooke v. United States, 128 U.S.App.D.C. 19, 24, 385 F.2d 279, 284 (1967). *See also* United States v. Howard, *supra*, 139 U.S.App. D.C. at 353, 433 F.2d at 511.

request for an instruction in this case specifically directed the court's attention to a rational theory of defense.

The question remains whether the charge to the jury on appellant's defense theory was sufficient to satisfy the *Brooke* requirement. Appellant's position is that the court should have granted his request for a specific instruction that defendant's good faith belief that he was purchasing the car from the true owner would be a complete defense, and that such an acquisition furnishes satisfactory explanation of appellant's possession if the jury believes he was duped. In the alternative, appellant says that in alluding to the defense of good faith belief, "only in connection with the possible negation of the *specific* intent needed to prove knowing receipt of stolen property", the court left a "clear inference" that the same defense would not be available to appellant on the charge of unauthorized use of a motor vehicle. The instructions referred to were as follows:

Now, having instructed you with respect to the essential elements of receiving stolen property and unauthorized use of a motor vehicle, as well as the inference, which may be utilized, if you see fit, I also instruct you with respect to the claim of right to the vehicle.

Now, evidence has been introduced the Defendant believed that he had a right to the property which he is alleged to have received and used.

Now, I instruct you that if a person received the property of another but does so in the good faith belief that he has a right to the property, the specific intent essential to that claim of receiving property is lacking. The Government must prove beyond a reasonable doubt the Defendant acted with the specific intent to defraud when he received the property. If you have reasonable doubt with respect to whether or not the Defendant acted and received the property with specific intent to defraud, then, you must find him not guilty of the charge

of receiving stolen property. [Tr. at 117–18.]

■ Contrary to appellant's contention, however, this was not the only reference to his theory of defense. The court also instructed the jury that the government must prove beyond a reasonable doubt each of the four essential elements of the offense of unauthorized use of a motor vehicle, specifically:

. . . that the Defendant, Mr. Fleming, used and operated a motor vehicle; second, that he operated or drove it for his own profit, use, or purpose; third, that he did so without the consent of the owner; and fourth, that at the time he used or operated the vehicle, *he knew that he did so without the consent of the owner.* . . .

\* \* \* \* \* \*

I instruct you that an act is done knowingly if it is done voluntarily and purposefully *and not because of mistake, inadvertence, or accident.* [Emphasis supplied.] [Tr. at 113–14.]

This language in reference to unauthorized use of a motor vehicle was consistent with appellant's defense. The absence of further elaboration hardly amounts to plain error since there would seem to be no possible way a jury could find the specific intent necessary to find appellant guilty of the crime of receiving stolen property without finding the use and operation of the stolen car anything but "unauthorized" as the term appears in D.C.Code 1967, § 22–2204.

Appellant's claim that he bought the car in good faith from an individual who purported to be the true owner is a good defense if after hearing the testimony the jury is left with a reasonable doubt as to the guilt of the accused. The issue was clearly before the jury. Appellant himself testified concerning these facts and counsel's closing argument was based heavily on this defense. "We think the charge as given adequately accommodated the issue to

which counsel's request for an instruction was addressed." Brooke v. United States, 128 U.S.App.D.C. 19, 25, 385 F.2d 279, 285 (1967).

### III

Appellant's final contention is that his conviction should be reversed because of the impropriety of certain remarks made by the prosecutor in his closing argument to the jury. No objection to the remarks was made at trial; consequently, there was no request for any curative instructions. Thus we are met with a second claim of plain error.

The prosecutor made the following reference concerning the absence of "Mr. Portertelli" and "Mr. Watt" who allegedly sold the stolen car to appellant:

> You might recall that these were the two individuals that Mr. Fleming stated were involved in a sales transaction at the bowling alley, but ladies of the jury, the evidence shows that although Mr. Fleming had ample opportunity to find Mr. Watt and the other person and produce them, those persons have not been brought before you today. [Tr. at 102.]

■ As we have so recently explained,[10] the Supreme Court has stated the rule that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."[11] However, with respect to witnesses whom appellant might have been powerless to produce at the trial, the prosecutor is not allowed to argue that from this failure an inference might be drawn that their testimony would not have been favorable to appellant.[12] Thus, in order to avoid prejudicial misuse of comment

on the failure to produce a witness the rule was formulated in Gass v. United States, 135 U.S.App.D.C. 11, 19–20, 416 F.2d 767, 775–776 (1969) :

> . . . that for the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness, an advance ruling from the trial court should be sought and obtained. We think, too, that if such argument is to be permitted, an appropriate instruction should be given defining for the jury the conditions under which the inference might be properly drawn. . . .

*See also* United States v. Young, 150 U.S. App.D.C. 98, 463 F.2d 934 (1972).

■ The requirement in *Gass* is that an advance ruling be sought before the prosecutor may urge the jury to draw an adverse inference, but in the instant case, in more innocuous terms than in Conyers v. United States, D.C.App., 309 A.2d 309 (1973), the prosecutor merely mentioned the absence of the witnesses without asking the jury to infer that the missing witnesses' testimony would be adverse to appellant. Moreover, there is present in this case not only the question of appellant's ability to locate the witnesses, but the question of whether the witnesses actually exist. Appellant testified at length about his return trips to the bowling alley and other efforts to locate "Mr. Portertelli" and "Mr. Watt". If in this brief reference to appellant's inability to produce the witnesses' error was committed, it was procedural error in failing to follow the *Gass* procedure. "Even if there is plain error, there must be some determination that it was prejudicial."[13] In both *Gass* and *Young* where the defendant also failed to object at trial, plain error neces-

---

10. Conyers v. United States, D.C.App., 309 A.2d 309 (1973).

11. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1894).

12. Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1967) ; Pennewell v. United States, 122 U.S.App.D.C. 332, 353 F.2d 870 (1965).

13. United States v. Young, *supra*, 150 U.S. App.D.C. at 105, 463 F.2d at 941.

sitating reversal was not found. We reach the same conclusion whether we base our decision on counsel's failure to object at trial or whether we simply consider the overall impact of the alleged error on the fairness of the trial.[14] Under these circumstances we hold that the error, if any, was harmless.

Affirmed.

---

14. *See* Harris v. United States, 131 U.S.App.D.C. 105, 108–109, 402 F.2d 656, 659–660 (1968) (Bazelon, C. J. concurring).