Lewis E. GOINS, a/k/a John Robinson,
a/k/a Edward Dickerson, Appellant,

v.

UNITED STATES, Appellee.

No. 82–550.

District of Columbia Court of Appeals.

Argued Sept. 29, 1983.

Decided Feb. 6, 1984.

William F. Timmons, LS #3708, with whom Steven H. Goldblatt, Washington, D.C., appointed by this court, G. Richardson Strafer, Appellate Law Fellow, were on the briefs, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and J. Alvin Stout, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, NEBEKER and BELSON, Associate Judges.

KERN, Associate Judge:

Appellant was charged with six counts of petit larceny, D.C.Code § 22–2202 (1981), based upon the theft of automobiles on six different occasions. The jury convicted him on two counts, acquitted on two counts, and reached no verdict on the remaining two counts.

Appellant argues on appeal that the evidence was insufficient to sustain the convictions. His primary contention on the sufficiency of the evidence is that the jury should not have been instructed that they could infer theft from his possession of recently stolen automobiles. Also, he claims that he was improperly denied a jury instruction on the defense of abandonment. Finally, appellant argues that the trial judge erroneously excluded, on the basis of hearsay, appellant's explanation as to his use of an alias name when he delivered the stolen automobiles to the place of business of a scrap metal processor.

The record reflects that a number of old cars disappeared off the city streets in 1980 and 1981. The owner of one car, a 1967 Chrysler, left it in a loading zone on November 3, 1980, after the engine stopped running. The car had current District of Columbia tags and four new tires. The owner found it missing when he returned the next day but did not report it stolen for forty days. The second car was a 1967 Ford Thunderbird which the owner promptly reported as stolen from its parking place in front of her home on February 18, 1981. This car also had District of Columbia tags and was in excellent condition.

Marlene Biggs, an employee of Joseph Smith and Sons, Inc., a scrap metal processor, testified at trial that on March 20,

1981, appellant delivered these two cars that had been stolen and presented indemnity agreement forms which he signed "John Robinson, Contract Towing." The vehicle identification numbers appearing on the indemnity forms matched the identification numbers as reported by the two car owners. The indemnity agreement was between the processor and the transferor of the vehicle, appellant. They confirmed that he had title to the vehicles and that he would hold harmless the processor.[1] Shortly after delivery of the cars appellant was arrested while driving his flat-bed truck. He presented a Maryland learner's permit bearing the name of Edward Dickerson.

Appellant testified in his defense that he only removed junk and abandoned cars. He admitted that he used the name John Robinson on March 20, 1981, but *denied* taking any of the cars in question or signing the particular indemnity forms. He explained that he was using the learner's permit in the name of Edward Dickerson because his driver's license had been revoked for drunk driving.

To show that appellant had stolen these cars the prosecutor relied on the inference that appellant was in possession of them. An instruction to that effect was given to the jury.

First, appellant argues that the evidence is insufficient to support guilt beyond a reasonable doubt. Primarily, he contends the jury should *not* have been instructed that it could infer from appellant's possession of recently stolen automobiles that he had stolen them. Appellant's contention is that: (1) the inference does not arise because the automobiles were *not* recently stolen; and (2) even if his possession of these two autos does raise an inference of guilt, the jury should have been instructed *not* to draw the inference if they found he explained his possession satisfactorily.

With regard to the issue whether the cars could be properly deemed "recently stolen", the record reflects that approximately one month and four and a half months, respectively, had elapsed between the date of the theft and the date appellant was found to be in possession of each of the two stolen automobiles which undergird his petit larceny convictions. In *Fleming v. United States*, 310 A.2d 214 (D.C. 1973), the defendant was in possession of a car stolen six weeks earlier; and in *United States v. Johnson*, 140 U.S.App.D.C. 54, 433 F.2d 1160 (1970), the defendant was in possession of a car stolen about nine months earlier. In both cases, the inference of recently stolen property was found to be reasonable for the jury's use and the appellate courts described recency as relative, based to a large extent on the nature of the property. The appellate courts concluded that whether the automobiles were "recently stolen" is properly left to the jury to decide. *Fleming v. United States*, *supra*, 310 A.2d at 218; *United States v. Johnson*, *supra*, 140 U.S.App.D.C. at 60 n. 40, 433 F.2d at 1166 n. 40.

■ In this case, as in *Fleming* and *Johnson*, the jury was appropriately instructed that they might, *if they saw fit*, draw the inference against appellant. They were told that the longer the time interval involved, the more doubtful the inference. We are not persuaded that as a matter of law the jury could *not* consider as "recently stolen" the possession of automobiles approximately one month and four and a half months after they were stolen. Therefore, we cannot say as a matter of law that it was error for the court to have instructed the jury to apply the inference if it chose to do so upon the evidence presented.

■ Appellant's second point is that it was plain error for the court to fail to tell

---

**1.** The Maryland Code permits one to transfer to a scrap processor a vehicle without a certificate *of title, if the vehicle is more than eight years* old and totally inoperable. The scrap processor usually requires an indemnity agreement which,

if he complies with other provisions of the Maryland Code not here relevant, the scrap processor may file with the Maryland government and collect a bounty. Md.Transp.Code Ann. § 25–210 (1977 & Supp.1982).

the jury that they should *not* draw the inference of guilt from possession of recently stolen property if they find the possession to be satisfactorily explained. However, appellant chose to deny possession of the stolen autos altogether rather than seek to explain his possession of them. Under these circumstances the court was not bound, *sua sponte,* to caution the jury specifically to consider testimony by appellant that he *generally* only towed old, badly damaged cars.

Moreover, "the propriety of the trial court's instructions is to be determined from the whole of the charge, rather than through scrutiny of isolated sentences or passages." *Charles v. United States,* 371 A.2d 404, 408 (D.C.1977). As we noted above, the trial judge made it clear to the jurors in his charge that they were *not* required to draw the inference of theft from appellant's possession of recently stolen autos and that the burden of proof of larceny charged remained with the government. We find that the instructions in the court's charge were sufficient to guide the jury as to the proper scope of its responsibility.[2]

Next, appellant argues that because he testified that he picked up only old and badly damaged cars and because of the lapse of time between the disappearance of the cars and the day they were sold to a scrap processor he was entitled to a jury instruction on abandonment. We find that appellant did not lay a foundation that would call for an abandoned property instruction to the jury. We note that "abandonment is an ultimate fact or conclusion based generally upon a combination of act and an intent to abandon." *Peyton v. United States,* 275 A.2d 229, 230 (D.C.

1971), citing *Friedman v. United States,* 347 F.2d 697 (8th Cir.), *cert. denied,* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965). There was no evidence that either of the two owners intended to abandon their cars since they both reported as a theft the disappearance of their cars. In addition, since appellant denied ever possessing these cars there was insufficient evidence to require an instruction on abandonment.

The jury was appropriately instructed on the specific intent issue and, in finding appellant guilty, chose to believe that defendant intended to steal the two automobiles. *Peyton v. United States, supra,* 275 A.2d at 330.

In sum, we conclude that there was ample evidence to support the jury's verdict. First, the government was entitled to the reasonable inference that appellant was guilty because of his unexplained possession of the recently stolen automobiles. Second, appellant falsely certified on the indemnity form that he was authorized by the cars' owners to deliver their cars to the scrap processor. Third, appellant, whose name is Lewis Goins and who resided in the District of Columbia, used a learner's permit in the name of Edward Dickerson of Maryland and signed the indemnity agreements in the name of John Robinson, with yet another Maryland address. Thus, there was evidence upon which the jury might conclude that appellant was using two separate names, neither of which was his own, at the two crucial stages of his business, thereby intending to conceal himself from the criminal conduct.[3]

Appellant's final argument is that the trial judge erroneously precluded as

---

**2.** We note that the court in *United States v. Johnson, supra,* 140 U.S.App.D.C. at 63–64, 433 F.2d at 1169–70, upheld the conviction on the fact that the jury was instructed to consider an acceptable explanation from *any* evidentiary source, reasoning that under such circumstances the inference instruction does not unconstitutionally burden the accused's right to maintain his silence at trial. Here, in contrast, appellant testified and denied possession; thus, his right to remain silent is not an issue.

**3.** Specifically, appellant, while driving around his flatbed truck, was Edward Dickerson of Maryland. Yet, if anyone tried to trace where Edward Dickerson delivered the automobiles he picked up for scrap processing, they would be unable to do so because at that second crucial stage of his business, appellant used the name John Robinson.

hearsay his testimony as to the reason for his use of the alias "John Robinson", on the occasions when he visited the scrap processor. In his opening statement, appellant's counsel advised the jury that appellant would testify that John McGarvey, the purchasing agent at the scrapyard, had asked him to continue using the name of a former employee of appellant, John Robinson, for bookkeeping purposes. However, during trial, when counsel sought to elicit from appellant why he had used that name, the prosecution objected and the court sustained such objection on the ground of hearsay. Appellant argues that this is not hearsay, but a statement offered for the purpose of showing its effect upon the listener, explaining subsequent conduct, and thus admissible. We agree. *See Jenkins v. United States*, 415 A.2d 545, 547 (D.C.1980).

■ However, we conclude that the court's ruling, while error, was harmless. That is, upon review of the record we are able to conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Specifically, the evidence is not just that appellant used an alias, John Robinson, when signing the indemnity form upon making delivery at the scrapyard, but there was the additional evidence that appellant used a second alias when driving his truck after selling the stolen autos. The significance of the evidence to the jury is not therefore simply the use of one alias, John Robinson, but the use by appellant of two different aliases at two crucial phases of his business, thus permitting the inference that appellant was thereby insulating himself from any official scrutiny while picking up and then delivering the stolen autos to the scrap processor.

In sum, we are able to conclude that the particular manner in which appellant used

two aliases here is sufficiently indicative of appellant's criminal motive as to assure us that the jury's judgment in finding appellant guilty of these particular larcenies was not swayed by the court's error in denying opportunity to explain the use of the one alias.[4]

*Affirmed.*

BELSON, Associate Judge, dissenting:

I agree with the majority that the trial court erred in excluding as hearsay appellant's statement that the scrap dealer's purchasing agent asked him to continue using the name of a former employee of appellant to simplify the dealer's bookkeeping. However, I am unable to agree that this error was harmless.

The evidence that appellant had used two aliases could very well have been significant to the jury's decision to convict appellant on two counts of petit larceny. Appellant was allowed to explain his other use of an alias. He testified that he used the name Edward Dickerson in obtaining a learner's permit because his own permit had been revoked for drunk driving. While that explanation did him no honor, the jury might have found it credible.

Appellant was not, however, allowed to explain his use of the alias, John Robinson, at a most crucial phase of the transaction, in signing a certificate that he was the owner of the automobiles in question. While we might speculate that the jury would have have disbelieved appellant's testimony that he had been told by the scrap processor to use a certain alias to simplify bookkeeping, we cannot base our determination on such conjecture. Appellant was entitled to have the jury consider his explanation. If the explanation had been believed, then the government's case against appellant would have been considerably weaker.

The majority stresses that appellant used *two* aliases in conducting his business, and

---

**4.** That the jury was able to analyze and weigh with particularity the evidence presented is demonstrated by their return of mixed verdicts

on the six criminal incidents charged against appellant.

states that this "permitt[ed] the inference that appellant was thereby insulating himself from any official scrutiny while picking up and then delivering the stolen autos to the scrap processor." At 366. I agree that this inference was *permitted*. But it was by no means *compelled*, and I conclude there is a real danger that the jury's judgment was influenced by the trial court's erroneous ruling. Aside from the circumstances surrounding appellant's sale of the automobiles to the scrap dealer, the government's case rested almost entirely on inferences which could have been drawn from the possession of the not-so-recently stolen property. Accordingly, I think we cannot say with fair assurance that the judgment here was not substantially swayed by the error. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). I would reverse and remand for new trial.