**Floyd D. PARKER, Appellant,**

v.

**UNITED STATES of America.**

No. 85–6161.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 1986.

Decided Sept. 17, 1986.

Charles B. Wayne, Washington, D.C., appointed by the Court, for appellant.

David Schertler, Asst. U.S. Atty., a member of the Bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of the Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. At-

tys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, SCALIA and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This is an appeal from a conviction of armed bank robbery, 18 U.S.C. § 2113(a) & (d) (1982), and of carrying a firearm during commission of a crime of violence, 18 U.S.C. § 924(c) (Supp. III 1985). It presents the issue of the nature of proof necessary to establish that the instrument carried by the defendant was a "firearm" within the meaning of the statute, and the issue of prejudicial effect of the so-called *"falsus in uno"* jury instruction regarding witness credibility.

I

On June 27, 1985, Sallie Dozier, the assistant manager of a downtown branch of Capital City Savings and Loan (now Meritor Savings Bank), arrived for work shortly before 8:30 a.m. A few minutes later, Dozier unlocked an outside door to admit Hirut Menkir, one of the bank's tellers. As Menkir entered the bank, a man appeared behind her, showed Dozier and Menkir a gun stuck in his waistband, and ordered the women further inside the bank. After forcing Dozier to open a safe containing keys to the teller drawers, the man robbed the bank of $6,356 before fleeing on foot. Defendant Floyd Parker was arrested and charged with the robbery two months later.

At trial, Parker testified that on the morning of the robbery he was alone at his sister's home recuperating from a shoulder injury. His sister and fiancee also testified and corroborated his alibi. A jury found Parker guilty on both counts and he was sentenced to five to fifteen years imprisonment for robbery and five years for carrying a firearm. He appeals.

II

18 U.S.C. § 924(c) provides that those convicted of using or carrying a "firearm" while committing a violent federal crime shall receive, in addition to the punishment prescribed for the underlying offense, a mandatory, consecutive prison term of five years. The definition of "firearm," which applies not only to the firearm crime provision but also to the extensive dealer registration and gun control provisions of the same title (for which it was obviously primarily designed), states that a "firearm" is

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3) (1982). Read literally, the statute would punish one who robbed a bank carrying nothing but a harmless silencer, but would not reach a robber brandishing a deadly antique firearm. Parker's complaint, however, is not with this inelegance, but with what he contends was the government's failure to prove its case.

At trial, the government neither produced the weapon carried by Parker nor offered any evidence that the gun was fired. Rather, it offered the testimony of Dozier and Menkir that Parker carried a "gun" with which he threatened to "[b]low [their] ... head[s] off." Dozier testified that the gun was "silver" with a "vinyl-looking" brown handle, while Menkir testified that she saw the brown handle of "a pistol, [a] small one, like the policemen use."

Parker argues that this evidence was insufficient to convict him of carrying a "firearm"—*i.e.*, a "weapon ... which will ... expel a projectile by the action of an explosive." (He does not contend that the gun was an antique.) Parker concedes that the government was not required to produce the weapon or to show that it had been fired, but argues that for eyewitness testimony to suffice, it must be given by persons knowledgeable about firearms who

had an opportunity to examine the weapon closely. Because no such witness testified, Parker argues, the District Court erred in denying the motion for judgment of acquittal he made at the close of the prosecution's case-in-chief. We must decide whether, taking into account only the evidence offered by the government in its case-in-chief,[1] but viewing it in the light most favorable to the prosecution, Parker's motion should have been granted because the evidence "[was] such that a reasonable juror *must* have [had] a reasonable doubt," *United States v. Bethea*, 442 F.2d 790, 792 (D.C.Cir.1971), as to whether the object carried by Parker was a "firearm." *See United States v. Foster*, 783 F.2d 1087, 1088 (D.C.Cir.1986).

In *United States v. Harris*, 792 F.2d 866 (9th Cir.1986), the court upheld a § 924(c) conviction although the government did not produce the weapon at trial or prove that it had been fired. The jury could infer that the defendant carried a "firearm," the court found, where the employees of the robbed bank testified that he carried a "gun," surveillance photographs showed him holding what appeared to be a gun, *and a customer familiar with guns* testified that the weapon "was gunmetal" and "appeared to be either a .38 or .45 automatic." *Id.* at 868. Courts have relied upon the testimony of witnesses with firearms expertise in upholding convictions under 18 U.S.C. app. § 1202(a)(1) (1982), which prohibits the receipt, possession, or transport by convicted felons of any "firearm" (defined in 18 U.S.C. app. § 1202(c)(3) almost precisely as in 18 U.S.C. § 921(a)(3)). *See, e.g., United States v. Turner*, 565 F.2d 539, 541 (8th Cir.1977) (per curiam); *United States v. Liles*, 432 F.2d 18, 19–20 (9th Cir.1970). In none of these cases, however, is there any indication that the courts

viewed testimony by "expert" witnesses as *necessary;* rather, the courts simply described why the evidence in the record of the particular case was sufficient to prove the existence of a "firearm."

More instructive are cases reviewing convictions under the postal robbery statute, 18 U.S.C. § 2114 (1982), and the federal bank robbery statute, 18 U.S.C. § 2113(d), both of which provide enhanced sentences for those convicted of jeopardizing the life of any person "by the use of a dangerous weapon," but do not define "dangerous weapon." Typical of these cases is *United States v. Marshall*, 427 F.2d 434 (2d Cir. 1970), in which two bank robbers were convicted on the basis of testimony that one of them brandished a silver revolver while the other carried a sawed-off shotgun. The defendants argued that the government had failed to prove that the guns were loaded and therefore "dangerous" weapons. While the court agreed that the prosecution was required to show that the guns were in fact loaded,[2] it held

> that the jury may infer that a gun used during a robbery was loaded in the absence of direct proof that the chambers contained bullets. The act of threatening others with a gun is tantamount to saying that the gun is loaded and that the gun wielder will shoot unless his commands are obeyed. Furthermore, the use of an unloaded gun to rob a bank would be a very hazardous venture for the robber. ... In our opinion, it is so unlikely that a bank robber who purports to be armed would undertake this risk that an inference that the gun was loaded is justified.

*Id.* at 437. *Accord, United States v. Love*, 746 F.2d 477, 479–80 (9th Cir.1984)

---

**1.** In *United States v. Foster*, 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc), we held prospectively that "a criminal defendant who, after denial of a motion for judgment of acquittal at the close of the government's case-in-chief, proceeds with the presentation of his own case, waives his objection to the denial." Parker's 1985 trial was governed by the prior law, which did not impute such a waiver.

**2.** The Supreme Court recently held that even an "unloaded gun [is] a 'dangerous weapon' within the meaning of 18 U.S.C. § 2113(d)." *McLaughlin v. United States*, —— U.S. ——, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). However, in the pre-*McLaughlin* cases discussed in text, the courts assumed that § 2113(d) was violated only by the use of a loaded, operable gun.

(§ 2114); *United States v. DePalma,* 414 F.2d 394, 396 (9th Cir.1969), *cert. denied,* 396 U.S. 1046 (1970) (§ 2113(d)); *Lewis v. United States,* 365 F.2d 672, 674 (10th Cir. 1966), *cert. denied,* 386 U.S. 945, 87 S.Ct. 978, 17 L.Ed.2d 875 (1967) (§ 2113(d)); *United States v. Roach,* 321 F.2d 1, 4–5 (3d Cir.1963) (§ 2113(d)); *Wagner v. United States,* 264 F.2d 524, 530–31 (9th Cir.), *cert. denied,* 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959) (§ 2114).

■ It seems to us that this eminently sensible approach is equally appropriate in the § 924(c) context, and that the testimony of Dozier and Menkir is adequate to support Parker's conviction. But Parker—contrasting the rather specific definition of "firearm" in § 921(a)(3) with the absence of a statutory definition of "dangerous weapon"—argues that this distinction makes a different character of proof necessary for § 924(c) convictions. We disagree. The mere fact that a different *element* must be proved would establish that a different *manner of proof* is necessary only if the difference in the elements is such as to demand different probative evidence. That is not so here. The element to be established in the dangerous weapon cases cited above—that the defendant used a real, loaded, operable gun—would profit from expert observation no less than the element whether he used a "firearm" within the definition of § 921(a)(3). In fact, there is little if any difference between the question whether he used a gun and the question whether he used a "weapon ... which will ... expel a projectile by the action of any explosive." We see no reason why there should be any difference in *how* the proof of the answers to these questions must be made.

The District Court properly denied Parker's motion for a judgment of acquittal on the § 924(c) count because the government presented sufficient evidence to permit a reasonable jury to infer that the object carried by Parker was a "firearm."

### III

Parker contends that both of his convictions must be reversed because the judge instructed the jury as follows:

If you believe that any witness has willfully testified falsely with respect to any material fact which the witness can not reasonably be mistaken about, then you may, if you deem fit to do so, disregard all or any part of the testimony of that witness or you may accept such portion of his testimony as you find worthy of belief.

Parker asks us to hold that the giving of such a *"falsus in uno, falsus in omnibus"* instruction is *per se* reversible error, or, failing that, to declare that in this case the instruction operated to deprive him of a fair trial. We decline to do either.

■ While the *falsus in uno* instruction has been criticized frequently as superfluous and potentially confusing, no federal circuit, to our knowledge, has held that the giving of such an instruction will result in automatic reversal. Under the practice of this circuit, trial judges have discretion not to give the instruction, *see Shelton v. United States,* 169 F.2d 665, 667 (D.C.Cir.), *cert. denied,* 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387 (1948), and when it is given we will examine the record as a whole to ensure that it was not given in such a manner as unfairly to prejudice the defendant, *see United States v. Howard,* 433 F.2d 505, 512 (D.C.Cir.1970). In *Howard,* for example, the trial court specifically referred to the defendant in giving the *falsus in uno* charge, arguably suggesting, according to the appellant, that the judge considered portions of his testimony willfully false; but we nonetheless found no reversible error because "the instructions delivered in the charge as a whole were adequate to impress reasonable jurors with a clear understanding of their exclusive authority to judge witness credibility."

Similarly, we think that the *falsus in uno* instruction given below (which, unlike the instruction in *Howard,* does not even refer to the defendant) did not unfairly prejudice Parker. Nothing in the record indicates that a reasonable juror would suspect that the judge was "signalling" the

jury to find that a particular witness had testified falsely. Considering the entirely permissive rather than mandatory nature of the inference which the instruction described, the charge as a whole, and the record of the entire proceeding, we do not doubt that the jurors understood that they had "exclusive authority to judge witness credibility." *Id.*

*Affirmed.*