976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Aaron FARLEY, Defendant-Appellant.
 No. 91-3858.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1992.
 
 Before KENNEDY and SILER, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Aaron Farley, appeals his conviction of: (1) conspiracy to distribute and possess with intent to distribute over five grams of cocaine base, in violation of 21 U.S.C. § 846; (2) distribution of over five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c).
 
 
 2
 The issues are whether the district court: (1) erroneously denied Farley's dismissal motion; (2) erroneously denied Farley's suppression motion; (3) abused its discretion in sustaining a government objection to defense cross-examination; (4) erroneously denied Farley's acquittal motion; (5) abused its discretion in denying Farley's mistrial motion; and (6) erroneously determined Farley's base offense level under U.S.S.G. § 1B1.3.
 
 
 3
 For the following reasons, Farley's conviction is AFFIRMED.
 
 I.
 
 4
 Farley operated a crack house ("house") in Columbus, Ohio, where approximately $5,000 worth of crack cocaine ("crack") was sold daily. To avoid law enforcement officers, the operation was moved to different locations on several occasions. In November, 1990, after receiving numerous complaints, Columbus narcotics officers conducted surveillance, and, using undercover agents and informants, purchased crack at 613 South Champion Avenue. After a search warrant was issued for another location, where the operation had moved, agents arrested several persons and recovered crack, cash, and drug paraphernalia. This investigation led the agents to the 1401 Lockbourne Road operation. When detectives purchased crack at this location, Farley, who was armed with a handgun, answered the door, and handed the cocaine to another person to give to the detective. One of the officers left to obtain a search warrant, but, before he returned, the agents entered the residence at approximately 11:42 p.m. on November 29, 1990, to make a "protective sweep." Exigent circumstances existed, as: (1) firearms had been pointed at informants, who had made purchases; (2) inside the house were lookouts, who might have been aware of police surveillance and destroyed evidence; and (3) approximately thirty-five people entered the house within a twenty-minute period, resulting in potential destruction of evidence. The execution of the search warrant did not begin until after the warrant was signed, at approximately 12:20 a.m. on November 30, 1990. There is no evidence that the contraband was seized during the initial entry, which was only to secure the premises until the warrant was obtained. During this search, officers recovered: (1) drug paraphernalia; (2) cash, including that from the controlled purchases; (3) a .22 RG firearm in the north bedroom, where Farley was found; (4) miscellaneous papers; and (5) a mirror with traces of crack and cocaine residue, and Farley's fingerprint on it.
 
 
 5
 Farley was arrested on November 30, 1990, and charged with state offenses. On December 10, 1990, a federal detainer, issued by the United States Marshal's office to the Franklin county jail, where Farley was held on the state charge, advised the Sheriff's department to immediately notify the Marshal's office upon Farley's release from state custody. The state charges were dismissed on December 11, 1990. However, the Marshal's office was not notified until December 19, 1990, when it immediately took Farley into custody, and Farley was served with a federal complaint. On January 17, 1991, the federal grand jury indicted Farley. After an evidentiary hearing, the district court denied Farley's dismissal and suppression motions. Farley was convicted and sentenced to 360 months on the conspiracy and distribution counts and 60 months on the firearm count, plus a term of supervised release.
 
 II.
 
 6
 Farley's argument that the district court erroneously denied his dismissal motion is meritless. "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (emphasis added). Thus, an individual is not arrested until he or she is taken into custody after a federal arrest. United States v. Copely, 774 F.2d 728, 730 (6th Cir.), cert. denied, 475 U.S. 1049 (1985). Normally, the speedy trial requirement is not triggered by an arrest on state charges nor by a federal detainer. Id. A detainer "is simply an informal process, advising the officials of an institution in which a prisoner is incarcerated that the prisoner is wanted on pending criminal charges elsewhere, and requesting notification to the filing jurisdiction prior to the prisoner's release." United States v. Shahryar, 719 F.2d 1522, 1524-25 (11th Cir.1983).
 
 
 7
 Farley was taken into federal custody on December 19, 1990, and twenty-nine days later, the grand jury indicted him. Thus, Farley's speedy trial right was not violated. Accordingly, the district court properly denied Farley's dismissal motion.
 
 
 8
 In addition, the sanction for failure to indict a defendant within thirty days is dismissal of the complaint, not dismissal of the indictment. See 18 U.S.C. § 3162(a)(1). Of course, the court could dismiss it with prejudice, but inasmuch as the court here did not dismiss the charges, it would probably not find prejudice where the fault did not lie with federal authorities. A dismissal of the indictment is allowed only where the defendant is not brought to trial within seventy days of arraignment, as extended by excludable time. 18 U.S.C. § 3162(a)(2). Farley never raised that issue below or in this court.
 
 III.
 
 9
 Farley's argument that the district court erroneously denied his suppression motion is meritless. A warrantless entry may be made when the police reasonably believe that evidence destruction is imminent. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988). Furthermore, the district court's finding of exigent circumstances should not be disturbed unless clearly erroneous. United States v. Gargotto, 510 F.2d 409, 411 (6th Cir.1974), cert. denied, 421 U.S. 987 (1975) ( citing Davis v. United States, 328 U.S. 582 (1946)). The government was required to prove that the officers had a reasonable belief that: (1) someone was inside the house; and (2) the parties were aware of the police so that the destruction of evidence was imminent. Sangineto-Miranda, 859 F.2d at 1512. First, the officers reasonably believed that persons were inside the house, as two confidential informants made controlled purchases prior to the SWAT team's entry and, within twenty minutes, approximately thirty-five people had entered the premises. Second, the officers reasonably believed that the destruction of evidence was imminent for several reasons. Several lookouts were in the house. An individual, while passing an officer's vehicle, looked inside it before entering the house. An officer stopped an individual after leaving the house. Thus, the protective sweep was justifiable and necessary. See Maryland v. Buie, 494 U.S. 325, 335 (1990); United States v. Korman, 614 F.2d 541, 547 (6th Cir.), cert. denied, 446 U.S. 952 (1980).
 
 
 10
 In addition, the independent source rule preserves the evidence from suppression. Silverthorn Lumber Company v. United States, 251 U.S. 385, 392 (1920). Even if there was an illegal entry by police officers, evidence need not be suppressed when it is seized at a later time pursuant to a valid search warrant and the information contained in the search warrant was obtained by police before the initial entry into the residence. Murray v. United States, 487 U.S. 533, 542 (1988); Segura v. United States, 468 U.S. 796, 799 (1984). Accordingly, the district court did not err in denying Farley's suppression motion.
 
 IV.
 
 11
 Farley's argument that the district court abused its discretion in sustaining a government objection to defense cross-examination is meritless, as shown through his own testimony:
 
 MR. BROWN:
 
 12
 Q. Do you remember telling someone that you had a squirt gun and not a pistol? Do you remember that?
 
 
 13
 A. Yes, sir.
 
 
 14
 Q. Who did you tell that to?
 
 
 15
 A. My lawyer, I was trying to find out how I go around about trying to beat this gun charge.
 
 
 16
 Q. You were concerned about the gun charge, right?
 
 
 17
 A. Yes, sir.
 
 
 18
 Q. And you told your lawyer it wasn't a gun, it was a squirt gun, right?
 
 
 19
 A. No, I asked him--
 
 
 20
 MR. SPARTIS: Your Honor, I am going to object, and may I approach the bench?
 
 
 21
 THE COURT: Step forward.
 
 
 22
 (Bench conference out of the hearing of the jury).
 
 
 23
 MR. SPARTIS: It appears that Mr. Brown is getting into privileged communication of this witness with his attorney, and I would like to know how Mr. Brown learned this if it is a fact.
 
 
 24
 THE COURT: Well, all right. What was the basis for your question?
 
 
 25
 MR. BROWN: I asked him--obviously he is now saying a different thing about whether it was a gun or not.
 
 
 26
 THE COURT: Just a minute. What previous line of questioning.
 
 
 27
 The objection is sustained. Let's move on.
 
 
 28
 (End of bench conference.)
 
 
 29
 "Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." United States v. Katsougrakis, 715 F.2d 769, 778-79 (2d Cir.1983), cert. denied, 464 U.S. 1040 (1984). Where the defense cannot "produce a source or other information to verify its suspicions," an objection is properly sustained. Id.
 
 
 30
 The government's chief witness testified that he told his attorney, in order to avoid the firearm charge, that the firearm used was actually a squirt gun. Although defense counsel claimed that the statement was made at the preliminary hearing, the prosecutor suggested that there was no preliminary hearing. Thus, defense counsel was unable to provide an alternative basis for this line of questioning, and the district court did not have to consider whether the statement fell within privileged communications. Accordingly, the district court did not abuse its discretion in sustaining the government's objection to defense counsel's cross-examination, even if the statement was not privileged.
 
 V.
 
 31
 Farley's argument that the district court erred by denying his acquittal motion is meritless. "The court on motion of a defendant ... shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses...." Fed.R.Crim.P. Rule 29. "The question is whether, after viewing the evidence in the prosecution's favor, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). It is not necessary that the government produce the gun at trial or even demonstrate operability of the gun in question. United States v. Driscoll, No. 91-1583, 1992 WL 165328, at * 12 (6th Cir.1992); United States v. Buggs, 904 F.2d 1070, 1076 (7th Cir.1990); United States v. Parker, 801 F.2d 1382, 1384 (D.C.Cir.1986), cert. denied, 479 U.S. 1070 (1987). "If it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989).
 
 
 32
 The witness' testimony and the recovered gun were sufficient evidence to sustain Farley's firearm conviction. Accordingly, the district court had sufficient evidence to sustain a 18 U.S.C. § 924(c) conviction and properly denied Farley's acquittal motion.
 
 VI.
 
 33
 Farley's argument that the district court abused its discretion in denying Farley's mistrial motion is meritless. The consideration of extrinsic evidence in the jury room is harmless error if "the error did not influence the jury, or had but very slight effect...." Kotteakos v. United States, 328 U.S. 750, 764-65 (1945). "Unless we proceed on the basis that the jury will follow the court's instruction where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense." Paoli v. United States, 352 U.S. 232, 242 (1957).
 
 
 34
 Farley alleges that he was prejudiced when the district judge refused to grant his mistrial motion. Farley moved for a mistrial immediately before the guilty verdict was announced, as a "post it" note and bullets were inadvertently sent to the jury for consideration. The "post it" note included information by an officer which stated that the officer found the gun loaded. Neither counsel inquired about the "post it" note. However, after defense counsel learned that the jury inspected this evidence, the district judge instructed the jury to only consider the gun. Moreover, whether the gun was loaded was irrelevant to Farley's guilt on the gun charge. Thus, the trial judge properly determined that the "post it" note and bullets were not prejudicial. United States v. Pinelli, 890 F.2d 1461, 1473-74 (10th Cir.1989) (finding post-it note in jury room unprejudicial where the content represented government contentions). In any event, the district court took immediate corrective measures in the jury instructions, and any error was harmless in light of the substantial evidence presented at trial. Accordingly, the district court did not abuse its discretion in denying Farley's mistrial motion.
 
 VII.
 
 35
 Farley's argument that the district court erroneously determined his base offense level under U.S.S.G. § 1B1.3 is meritless. A district court's factual finding on the amount of drugs attributable to a defendant may be overturned only if it is clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990). A defendant convicted of conspiracy is accountable for the reasonably foreseeable conduct of others in furtherance of the conspiracy. See U.S.S.G. § 1B1.3, Application Note 1. Such conduct properly includes consideration of "uncharged drugs" that are part of the scheme. United States v. Miller, 910 F.2d 1321, 1327 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991); United States v. Sailes, 872 F.2d 735, 736 (6th Cir.1989). Determination of the drug quantity by a preponderance of the evidence is valid and does not violate due process. United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990). Drug quantities that are not part of the count of conviction may be included in determining the base offense level as long as the drugs were "part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Robison, 904 F.2d 365, 371 (6th Cir.), cert. denied, 111 S.Ct. 360 (1990). However, due process requires that facts used for sentencing have "some minimum indicium of reliability beyond mere allegation." Id.
 
 
 36
 Relying on the probation officer's estimate, the district court properly concluded, by a preponderance of the evidence, that the quantity of cocaine base attributable to Farley exceeded 3.8 kilograms, as opposed to the 29 grams of crack actually recovered. Co-defendant Watson, a crack user, testified at the sentencing hearing that he was a "walking zombie or robot" during the conspiracy time period but testified at trial that his mind was "clear" when he was smoking crack. Nevertheless, he testified that each of the four locations was responsible for selling $5,000 of crack cocaine daily. While co-defendant Taylor's testimony that a "busy day" would produce $2,000 to $4,000 in daily revenues did not state how many days per week drugs were sold, it did corroborate Watson's testimony that a substantial amount of drugs was sold daily. The probation officer's estimate was based upon the determination that one ounce of crack cocaine has a street value of $1,250. Therefore, $3,000 per day multiplied by seven days per week, results in a total drug amount of 3.810 kilograms based on a sixty day period. Moreover, even if Farley only sold crack in that volume for thirty days, not sixty days, it would still amount to 1.9 kilograms of crack, which is above the level (1.5 kilograms) required to put Farley in the 38 base offense level, where he was with 3.8 kilograms. Thus, Farley's due process rights were not violated. Accordingly, the district court did not erroneously determine Farley's base offense level. Miller, 910 F.2d at 1327.
 
 
 37
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation