97 F.3d 1462
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nyerere Q. JASE, Defendant-Appellant.
 No. 95-50286.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Sept. 13, 1996.
 
 Before: REINHARDT, HALL, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On January 12, 1995, defendant-appellant Nyerere Q. Jase was convicted of conspiracy in violation of 18 U.S.C. § 371, armed robbery in violation of 18 U.S.C. § 2113(a)(d), and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). On appeal, Jase contends (1) that one of the jurors should have been dismissed for bias; (2) that there was insufficient proof to show an actual gun, instead of a mere replica, had been used in the robbery; and (3) that the trial court erred in enhancing his sentence under the Sentencing Guidelines by two levels for obstruction of justice. We now affirm on all issues.
 
 
 3
 * Jase contends that one of the jurors was biased because her son had been arrested for welfare fraud over the weekend of January 7, 1995, right after the jury had begun deliberations. Jase's concern arises due to the juror's initial response to Judge Taylor's inquiries regarding the effect of this episode on her ability to proceed without bias.
 
 
 4
 We recognize that much of the trial judge's final decision relies on his or her evaluation of the demeanor of the juror, and other circumstances surrounding the situation. Thus, "determination[s] of impartiality, in which demeanor plays such an important part, [are] particularly within the province of the trial judge." United States v. Egbuniwe, 969 F.2d 757, 762 (9th Cir.1992) (quoting Ristaino v. Ross, 424 U.S. 589, 595 (1976)). In evaluating whether any juror bias actually existed, we determine if "the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." Patton v. Yount, 467 U.S. 1025, 1035 (1984).
 
 
 5
 In this case, the district court judge extensively questioned the juror to determine if any bias did exist. He asked her about her relationship with her son, the crime for which he was arrested, and finally, her reaction to it. Although she initially responded that she might be biased because of this incident, she recanted almost immediately, noting that she would still be open minded, and that the incident would not interfere with her ability to be a juror. After additional questioning by the judge, she clearly indicated that she would not be biased.
 
 
 6
 Jase argues that the judge simply pressured the juror into recanting her initial response. Upon reviewing the transcript of the proceeding, we find no evidence of coercion by the court. The judge acted appropriately, and within his discretion, when he continued questioning the juror with the intention of clarifying her position. Furthermore, he did not abuse his discretion when he decided to retain the juror, based upon his impressions from her responses at this hearing. See United States v. Alexander, 48 F.3d 1477, 1484 (9th Cir.1995); United States v. Daly, 716 F.2d 1499, 1507 (9th Cir.1983). We therefore affirm the district court's decision to retain this juror.
 
 II
 
 7
 Next, Jase claims that the prosecution did not meet its burden of proving that Jase's co-felon Brown used an actual firearm instead of merely a toy or replica to rob the bank.
 
 
 8
 In order to violate 18 U.S.C. § 924(c)(1), the firearm used must be "designed ... or ... readily convert[ible] to expel a projectile by the action of an explosive." We have held that to be convicted under § 924(c), the defendant must have used a real gun, and not a toy replica. United States v. Westerdahl, 945 F.2d 1083, 1088 (9th Cir.1991).
 
 
 9
 To prove that a firearm used in the commission of a violent felony is real and not a toy, the government must present sufficient evidence for the jury to believe beyond a reasonable doubt that the gun was a real one. See Parker v. United States, 801 F.2d 1382, 1384 (DC Cir.1986). The government does not have to actually enter the firearm in question into evidence. See United States v. Harris, 792 F.2d 866 (9th Cir.1986); United States v. Patino, 962 F.2d 263, 265 (2d Cir.1992); Parker, 801 F.2d at 1383.
 
 
 10
 Here, the government met its burden. Five witnesses testified that Brown held a gun, and surveillance photos showed Brown holding what appeared to be a gun. Grays, another participant in the robbery, testified that Jase owned a nine millimeter Glock pistol, and that this was the gun that Brown used in the robbery. Three bank employees testified that Brown held a security guard at gun point. The bank security guard, who is familiar with guns, and was himself held at bay with the gun, testified that he believed it was a real firearm.
 
 
 11
 The only testimony suggesting that the weapon might be a replica came from FBI Agent MacDonald. He stated that, based solely on the surveillance photos, he could not be sure if the gun were real or if it were a replica. However, it is not necessary for a conviction that an expert identify the weapon as being a real gun from a photograph, especially when there are other witnesses to testify as to the presence of the firearm. See United States v. Jones, 907 F.2d 456, 460 (4th Cir.1990). "Credible witness testimony is sufficient to establish that a defendant possessed a firearm during the commission of a crime." United States v. Floyd, 81 F.3d 1517, 1526 (10th Cir.), cert. filed, No. 95-9346, (June 17, 1996); see also United States v. Taylor, 54 F.3d 967, 976 (1st Cir.1995).
 
 
 12
 Based on the testimony and the photos, we find that there was sufficient evidence that the gun was not a toy. There was the testimony of a co-conspirator, in addition to the testimony of four other witness that, taken together, certainly would allow a rational jury to conclude beyond a reasonable doubt that Brown used a real gun. Viewing the evidence in the light most favorable to the government, it is more than sufficient to sustain the conviction under 18 U.S.C. § 924(c).
 
 III
 
 13
 Finally, Jase contests the two-level enhancement of his sentence under the sentencing guidelines for an obstruction of justice. U.S.S.G. § 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." In Comment 3(b), it states that "committing, suborning, or attempting to suborn perjury" are examples of the offenses to which this enhancement is to apply.
 
 
 14
 The trial judge based this enhancement on two different grounds. First, he found that Jase had attempted to suborn perjury when he had contacted family members and friends to convince them to lie about his whereabouts at the time of the robbery. Alternatively, the judge found that Jase perjured himself on the stand when he testified that he was with another man at the time of the robbery. Because we affirm the enhancement based upon Jase's attempt to suborn perjury, we do not reach the second ground. See United States v. Ancheta, 38 F.3d 1114, 1119 (9th Cir.1994).
 
 
 15
 In order to qualify for the enhancement, the defendant must consciously act with the purpose of obstructing justice. United States v. Lofton, 905 F.2d 1315, 1317 (9th Cir.1990). In addition, according to Comment 5 of § 3C1.1, the evidence must be material, meaning that the "evidence, fact, statement, or information ... if believed, would tend to influence or affect the issue under determination." See United States v. Magana-Guerrero, 80 F.3d 398, 400 (9th Cir.1996).
 
 
 16
 Jase argues that because he abandoned the attempt to present perjured testimony by his friends and family during the trial, then that vitiated any wrongdoing on his part. He also contends that the government did not meet its burden of showing that Jase's efforts to create an alibi impeded its investigation.
 
 
 17
 Contrary to Jase's claims, for the specific purposes of § 3C1.1, comment 3(b), it is unnecessary for the government to demonstrate an actual impediment to its investigation. It is enough that the defendant's act have the potential to impede the investigation. As this Court has stated, "[w]hether justice is actually obstructed or impeded is irrelevant to the application of this section." United States v. Morales, 977 F.2d 1330, 1331 (9th Cir.1992); see United States v. Baker, 894 F.2d 1083, 1084 (9th Cir.1990).
 
 
 18
 The guidelines have been modified since these cases were decided, but that does not change the analysis under Comment 3(b). As noted in United States v. Benitez, 34 F.3d 1489, 1497 n. 6, the guidelines were modified "to distinguish between false statements that are made to probation officers, which do not need to impede the prosecution or investigation to constitute an obstruction of justice, and those that are made to the police, which do." See also Magana-Guerrero, 80 F.3d at 401 (specifically noting that attempting to suborn perjury does not require the government to demonstrate an actual impediment to its investigation).
 
 
 19
 This interpretation is supported by the guidelines themselves. While U.S.S.G. § 3C1.1, Comment 3(g) requires a false statement to a "law enforcement officer that significantly obstructed or impeded the official investigation or prosecution ...", Comment 3(b) contains no such language. Thus, it would follow that the Sentencing Commission specifically stated when it wanted the showing of an actual, instead of a potential, obstruction of justice.
 
 
 20
 For the purposes of the guidelines, it is irrelevant that Jase was not successful in his efforts. Just the attempt to suborn perjury merits a two-level increase under the guidelines. See United States v. Bingham, 81 F.3d 617, 633 (6th Cir.1996); United States v. Fetherolf, 21 F.3d 998, 1000 (10th Cir.1994). Jase took a substantial step towards completing his subornation of perjury. He contacted several family members, in addition to the clerk and owner of a liquor store, in the hopes of convincing them to lie on the stand for him. In addition, he filed a notice of alibi with these witness' names on the list, showing that he intended to follow through with the plan. Jase claims that he decided to abandon this plan when he realized that the witnesses could be punished for their perjury. However, the district court noted that Jase "backed off from [his first alibi] ... only when he was detected at it, and the government indicated that they had [taped telephone conversations to prove it]."
 
 
 21
 We conclude that the district court did not err in its application of the sentencing guidelines. Jase intended to suborn perjury, and the attempt was certainly material under the guidelines. If believed, the alibi would have made it impossible for Jase to be both at the store and at the bank, making it clear to the jury that he could not have been guilty of the robbery. As a result, this perjury could have obstructed justice. As long as the potential for obstruction existed, the enhancement is appropriate. United States v. Draper, 996 F.2d 982, 986 (9th Cir.1993); Baker, 894 F.2d at 1084. We therefore affirm the sentence enhancement for obstruction of justice.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3