107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward B. JONES, Defendant-Appellant.
 No. 96-3166.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1997.
 
 Before: WELLFORD, RYAN, and SILER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Edward B. Jones, was convicted on three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and three counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). On direct appeal to this court, Jones argues that he was provided ineffective assistance of counsel with regard to the firearm counts. Jones also challenges the district court's computation of his sentence under 18 U.S.C. § 924(c)(1). For the reasons that follow, we will affirm.
 
 I.
 
 2
 On November 21, 1994, a lone person, brandishing what appeared to be a gun, robbed the Fifth Third Bank in Columbus, Ohio. On November 29, 1994, and January 6, 1995, respectively, Bank One in Springfield, Ohio, and the Ohio Bank in Columbus, Ohio, were held up in similar fashion. On February 16, 1995, a seven-count indictment was returned against Jones. Counts 1, 3, and 5 charged Jones with the three armed robberies, in violation of 18 U.S.C. § 2113(a) and (d). Counts 2, 4, and 6 charged Jones with using a firearm during and in relation to each of the bank robberies, in violation of 18 U.S.C. § 924(c)(1), and count 7 charged him with using an incorrect Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B).
 
 
 3
 Jones's trial counsel, Jerry Weiner, believed that evidence that a bank robber's gun was perceived to be real by the victims of the robbery would be sufficient to convict the robber of "us[ing] ... a dangerous weapon," for purposes of 18 U.S.C. § 2113(d), and "us[ing] or carr[ying] a firearm," for purposes of 18 U.S.C. § 924(c)(1). Thus, Weiner believed that if Jones was convicted on counts 1, 3, and 5, he would "automatically" be convicted on counts 2, 4, and 6. After reviewing the government's evidence, Weiner encouraged Jones to accept a plea bargain. Jones maintained, however, that he had not committed the robberies, that he had been wrongly identified, and that he had an alibi. Although Weiner believed Jones would be convicted, he felt he had no choice but to present the alibi defense because Jones insisted upon it.
 
 
 4
 At trial, then, Weiner attempted to establish that Jones had been misidentified as the robber of the three banks. Weiner did not argue, in the alternative, that even if Jones had committed the robberies, he had not done so with a real gun; rather, Weiner consistently adhered to Jones's insistence that the government was prosecuting the wrong man. Accordingly, Weiner did not cross-examine any of the government's witnesses for the purpose of attempting to show that the "weapon" used in the robberies was not a real firearm. Weiner also presented no expert testimony suggesting that a bank teller, unfamiliar with handguns, might have difficulty distinguishing between real and fake firearms. During closing argument, Weiner told the jury that "[t]here is no question on November 11, 1994, there was a bank robbery; and there is no question in my mind, as well as your mind, that whomever performed that utilized a weapon."
 
 
 5
 The government presented bank surveillance photographs and eyewitness testimony to prove that Jones had used a real firearm in committing the bank robberies. The surveillance photographs from each robbery show the robber wielding what appears to be a gun. As to the firearm offense charged in count 2, three bank tellers described what they saw. Kim Kovacs testified that the robber pointed the gun at her, that the gun "was an automatic, and it was sort of blackish in color." Kovacs added that the gun looked like it was made out of steel or metal, not plastic, and that the gun looked real. Sonia Bashir testified that the gun was silver with a brownish handle, that "[t]here was chipped paint around the actual barrel," and that the gun's "trigger was pulled back." Bashir testified that she could not tell whether the gun was metal. Linda Brutger, who had the gun thrust into her ribs during the robbery, testified that the robber's gun was a semi-automatic 9 millimeter handgun. Brutger testified that she had been around guns all her life, had handled guns, had done target shooting with her family, and that she was able to identify the robber's gun specifically because she had used one in the past.
 
 
 6
 On count 4, the government again relied upon the testimony of several bank employees present during the robbery. Michele Cox, an assistant manager, testified that the gun was a "black, small to medium-sized automatic" and that it looked real. Heather Stevens, a bank teller, testified that the robber's gun was "[j]ust a handgun. It didn't have the--a barrel on top of--on top of where you put the bullets in." When asked if the gun was not like a revolver, she testified, "No, it wasn't a revolver." Kimberly Dawn Stokes, a bank teller, testified that the gun looked real, that metal and plastic have a "different sheen," and that the gun "didn't look plastic." Anita Stolarick testified that she was familiar with firearms because her husband and son both own guns and rifles. She testified that she had seen a gun like the robber's before and that the gun "was an automatic weapon[,] a dull gray metal ... medium to large size."
 
 
 7
 Finally, on count 6, the government presented the testimony of Molly Jones, the branch manager, and Betsy Bass, a teller. When Molly Jones was shown photographs of various guns after the robbery, she identified the robber's gun as a black semi-automatic. She added that there was nothing about the gun to make it look fake and that it "was black, and it had little crisscrosses going across it." Bass testified that the gun was a large, black gun, not a revolver, and that the gun looked real. She also testified that the robber put the gun to her head, that the gun actually touched her head, and that the gun was "very hard and cold and very present."
 
 
 8
 A jury found Jones guilty on counts 1 through 6 and not guilty on count 7. He was sentenced to 10 years' imprisonment on counts 1, 3, and 5, to run concurrently; five years' imprisonment on count 2, to run consecutively to the sentence on counts 1, 3, and 5; 20 years' imprisonment on count 4, to run consecutively to the sentence on counts 1, 2, 3, and 5; and 20 years' imprisonment on count 6, to run consecutively to the sentence on counts 1, 2, 3, 4, and 5. In January 1996, with new counsel, Jones moved for a new trial on the firearm counts pursuant to Fed.R.Crim.P. 33. Jones requested a new trial on the theory that his trial counsel, Jerry Weiner, had provided ineffective assistance. The district court determined that it did not have jurisdiction to hear Jones's Rule 33 motion because the motion had not been filed within seven days after the verdict and the motion was not based on newly discovered evidence. In the interests of judicial economy, however, the district court considered and rejected Jones's motion on the merits. Jones's timely appeal from the jury verdict is now before this court.
 
 II.
 A.
 
 9
 Jones argues that Weiner misunderstood the proof required for a conviction under 18 U.S.C. § 924(c)(1) and that Weiner provided ineffective assistance of counsel on the firearm counts by not pursuing a "toy gun" defense. Jones argues that in light of the evidence against him on the robbery counts any reasonable attorney, with a proper understanding of the law, would have offered such a defense. Specifically, Jones believes Weiner's assistance was constitutionally deficient under the Sixth Amendment because Weiner did not cross-examine eyewitnesses as to their observation of the robber's gun or as to their familiarity with firearms. He also urges that Weiner should have presented expert testimony describing the prevalence and deceptive appearance of fake firearms. Jones concludes that there is a reasonable probability that the jury would have found in his favor if Weiner had properly pressed the "toy gun" defense. We disagree that Weiner's assistance was constitutionally ineffective.
 
 
 10
 This court reviews ineffective assistance of counsel claims de novo. Glenn v. Tate, 71 F.3d 1204, 1206 (6th Cir.1995), cert. denied, 117 S.Ct. 273 (1996). The general rule is that this court will not hear such a claim when it is raised for the first time on direct appeal; rather, the defendant should raise such a claim in a post-conviction action pursuant to 28 U.S.C. § 2255. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). However, where the record is adequately developed, we may consider the merits of a defendant's claim. Id. We agree with the parties that the record is adequately developed for review of Jones's ineffective assistance of counsel claim. The facts relevant to Jones's claim are not in dispute. Rather, the government's disagreement with Jones turns on the legal significance of Weiner's handling of Jones's defense. We recognize that Weiner mistakenly believed that, in order to convict Jones on the firearm counts, the government was merely required to introduce evidence that the gun used during the bank robberies was perceived to be real by the victims. In fact, the government's burden is to prove beyond a reasonable doubt that an actual firearm was used. However, because we are convinced that Jones cannot satisfy the prejudice showing required by Strickland v. Washington, 466 U.S. 668 (1984), we decline to decide whether Weiner's performance was presumptively or actually deficient.
 
 
 11
 In order to obtain relief for ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. Id. at 686-88, 692. Where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed"; in such cases, the court is not obligated to "determine whether counsel's performance was deficient." Id. at 697.
 
 
 12
 In order to satisfy the prejudice prong of the Strickland inquiry, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. This standard requires the defendant to show more than "that the errors had some conceivable effect on the outcome," but it does not require the defendant to prove that his counsel's conduct more than likely altered the outcome in his case. Id. at 693. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 
 
 13
 Section 924(c)(1) provides, in relevant part, that
 
 
 14
 [w]hoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....
 
 
 15
 18 U.S.C. § 924(c)(1). Although a toy gun may qualify as a dangerous weapon for purposes of 18 U.S.C. § 2113(d), see, e.g., United States v. Medved, 905 F.2d 935, 940 (6th Cir.1990), in order to obtain a conviction pursuant to section 924(c)(1), the government must prove that an actual firearm was used. United States v. Kirvan, 997 F.2d 963, 966 (1st Cir.1993). The testimony of nonexpert eyewitnesses may be sufficient to establish that a real gun was used for purposes of section 924(c)(1). See, e.g., Parker v. United States, 801 F.2d 1382, 1384-85 (D.C.Cir.1986). In Parker, the court rejected a challenge to the sufficiency of the evidence for a conviction under section 924(c)(1). Id. at 1385. Although the government produced no weapon or evidence that the alleged firearm had been fired, the court held that the jury's decision could not be declared irrational in light of the nonexpert testimony of two witnesses who described the firearm. Id. at 1383-85.
 
 
 16
 Parker, and similar authorities from a number of circuits, make it abundantly clear that eyewitness, lay testimony can be sufficient to support a jury finding that a defendant used or carried a firearm in violation of section 924(c)(1). Of course, a challenge to the sufficiency of the evidence requires more deference to a jury's findings than the test under which we review Jones's claim. Nevertheless, we cannot conclude that, but for a failure by Weiner to pursue a "toy gun" defense, there is a reasonable probability that Jones would not have been convicted on counts 2, 4, and 6.
 
 
 17
 We base this decision on the quality of the evidence presented against Jones on the firearm counts. Although the government did not present a "smoking gun," the evidence against Jones was more than sufficient to sustain our "confidence in the outcome." Brutger testified to a lifelong familiarity with firearms and to her specific experience with and recognition of Jones's weapon. Stolarick also testified from experience. She related that her family keeps guns and rifles and that she had previously seen an "automatic weapon" like the one Jones carried during the bank robbery. Brutger's and Stolarick's testimony, with regard to counts 2 and 4, respectively, was substantially corroborated by other witnesses. With regard to count 6, Molly Jones specifically identified the gun used by Jones during the robbery and Bass testified that the gun was "very hard and cold" when pressed against her head.
 
 
 18
 In light of this evidence, we are unpersuaded that there is a reasonable probability that a different course of action by Weiner would have resulted in a different outcome for Jones.
 
 B.
 
 19
 Jones also challenges the district court's computation of his sentence, pursuant to 18 U.S.C. § 924(c)(1). Specifically, Jones objects to the treatment of his convictions on counts 4 and 6 as "second or subsequent conviction[s]." Jones acknowledges, however, that the basis of his objection is in direct conflict with the Supreme Court's holding in Deal v. United States, 508 U.S. 129 (1993). We are without authority to disregard this precedent and Jones's challenge to his sentence is, therefore, rejected.
 
 III.
 
 20
 The district court's judgment and sentence are AFFIRMED.